NEW CASTLE N. RY. CO. v. SIMPSON.

(*Circuit Court, W. D. Pennsylvania.* January 2, 1886.)

1. RAILROAD COMPANY—LIEN OF CONTRACTOR.
    Where a construction contract for building a railroad was set aside, at the instance of the railroad company, as *ultra vires*, with an allowance of compensation to the contractor for work actually performed by him, *held*, that for the sum so allowed him he was entitled to a contractor's lien under the Pennsylvania statute,—the resolution of January 21, 1843.

2. SAME—PRIORITY OF LIEN.
    The contractor's claim is to be preferred to that of adverse counsel for services rendered the company in the litigation with the contractor.

In Equity. *Sur* exceptions to the master's report.

*D. B. Kurtz, Marshall Brown,* and *S. W. Cunningham* for exceptants.

*R. B. McComb* and *Frank Whitesell, contra.*

ACHESON, J. The order of reference to the master, "to ascertain and report to the court the proper and just charges connected with this cause, and amount thereof, which ought to be paid out of the

property of the said company by the receiver," was made on the motion of the receiver's counsel, and (as the court understood the matter) the purpose was simply to determine the charges for which provision should be made before the receiver was discharged, and the property restored to the control of the railroad company, a conclusion to the litigation which then seemed to be in near prospect. Only claims strictly connected with the receivership were then spoken of, and the court did not anticipate that the master would be called upon to pass on other claims, or to determine any question of priority between claimants; and, indeed, save for the interpretation which has been put upon the order of reference, and the action of the master, it would be premature for the court now to consider such question; for, in point of fact, there is no fund for distribution at present under the control of the court, nor is it certain that there ever will be. The only property in the hands of the receiver is an unproductive and unfinished railroad. No decree for its sale has yet been made, and none may ever be made; for, upon the satisfaction by the railroad company of the money decree heretofore made in favor of Thomas P. Simpson, and the payment of its proper share of the costs of suit, and legitimate charges connected with the receivership, the company would be entitled to a restoration of its property.

Now, the very fact that this litigation may be so determined goes far to overthrow the conclusion of the learned master that the claims of the solicitors of the railroad company for their fees are both "part of the costs of this suit," and entitled to priority of lien over the claim of Thomas P. Simpson. Undoubtedly, a chancellor will, out of a fund for distribution, order compensation to the counsel engaged for the value of their services, when the fund, in equity and good conscience, should be subjected to such burden. *Appeal of McKelvy*, 16 Pittsb. Leg. J. (N. S.) 150. Thus, where one of many parties in interest recovers or saves from destruction a trust fund, his reasonable counsel fees will be charged on the fund, upon the ground that it would be inequitable that one alone should bear the burden when others partake of the benefit. *Trustees v. Greenough*, 105 U. S. 527. But is this principle available here to the solicitors of the railroad company, as against Thomas P. Simpson, and to his prejudice? Beyond disputation, their services have been valuable to their own client, and were there a surplus fund here to be disposed of, it might well be that, as against the railroad company itself, the court would order the reasonable fees of its counsel to be paid out of that surplus; and, possibly, in the distribution of such fund, these fees would be preferred to the claims of general creditors; but as against Thomas P. Simpson, I am quite at a loss to see what equity these solicitors have. Their services have in nowise benefited him. The original suit was brought by the railroad company against Simpson to set aside, as *ultra vires*, the construction contract between him and the company, and the prayer for its rescission prevailed. Thus Simpson lost the

profits of his bargain. Then a contest arising as to what was a reasonable compensation for the work of construction he had actually performed, the railroad company succeeded in reducing his claim. Moreover, the appointment of the receiver for the preservation of the property pending this litigation was made at the instance of Simpson, and under the prayers of his cross-bill, despite the opposition of the railroad company. Thus does it appear that from first to last the services of the company's solicitors have been adverse to Simpson, and without the slightest advantage to him. For the work of construction done by Simpson, he claims, and I think rightfully claims, the contractor's lien given by the Pennsylvania statute,—the resolution of January 21, 1843. Purd. 118; *Fox* v. *Seal*, 22 Wall. 424; *Tyrone & C. Ry. Co.* v. *Jones*, 79 Pa. St. 60. So that, by force of the statute, as well as upon general equitable principles, his right to payment out of the property, which exists by virtue of his services and expenditures, is superior to the claims of adverse counsel for fees subsequently earned in this litigation.

The exceptions which go to the *amount* of the master's allowances to the railroad company's solicitors (and also the special exceptions filed by A. C. Weaver) need not at present be considered; for, unless the railroad should go to sale, and a surplus over Simpson's claim be realized, the court, in the view we have taken, will not be called on to deal with the question of the reasonableness of those allowances, or, indeed, to deal at all with the subject of said fees.

And now, January 2, 1886, so much of the master's report as relates to the receiver's compensation and the fee of his counsel is confirmed; but all the exceptions filed by Thomas P. Simpson to said report, touching the preference given by the master to the claims of the solicitors of the Newcastle Northern Railway Company for fees, are sustained; and all other questions are reserved for further consideration hereafter.