BOSTON SAFE-DEPOSIT & TRUST CO. v. ADRIAN, MICH., WATER-WORKS.

*(Circuit Court, E. D. Michigan. July 25, 1891.)*

MORTGAGE—FORECLOSURE—SOLICITOR'S FEES—TRUST FUND.

> Upon foreclosure of a mortgage for $145,000 and interest, a decree was entered on default, and the property bought in by one of the bondholders for less than the mortgage debt. An allowance of $1,000 was made to the mortgagee, a trust company, and of $500 to its counsel. *Held,* that no further allowance to the trustee for services or counsel fees is warranted by the facts of the case.

In Equity. On exceptions to master's report.

On June 1, 1883, defendant executed to complainant, as trustee, a deed of trust or a mortgage to secure payment of 145 bonds of $1,000 each, payable in 20 years, with semi-annual interest at 7 per cent. per annum. The mortgage covered real estate in the city of Adrian, and the buildings, machinery, wells, mains, water-pipe, rights of way for pipe-line, hydrants, and plant used by the mortgagor in operating its works for supplying water to the city of Adrian, under a certain contract, and also to private consumers. Owing to a deficiency in the quality and quantity of the water supplied by the defendant, the city of Adrian refused payment of the agreed rentals, private patronage fell off, and the mortgagor was plunged into financial difficulties, and soon defaulted in the payment of the interest on its bonds. Notice of this default, with a request for the foreclosure of the mortgage, was given to the trustee by C. H. Venner, a bondholder, and pursuant thereto, and under the power contained in the mortgage, the trustee declared its election to consider the whole amount of the mortgage debt due, and accordingly, March 14, 1888, the bill of foreclosure was filed. Venner owned 120, and W. P. Sheffield, Jr., trustee for the heirs of Alfred Smith, owned the remaining 25, bonds secured by the mortgage. Pending the foreclosure proceedings, the city of Adrian, in due form and pursuant to the terms of its contract with defendant, required the erection of additional hydrants, and the extension of the water-mains and pipes. The deficiency in the water supply necessitated the enlargement of the water-works, and large additions and improvements in its plant. Defendant being without means for this purpose, Mr. Venner, of his own motion, without consulting the trustee or Sheffield, his fellow *cestui que trust,* and presumably in his own interest as owner of nearly five-sixths of the bonds, advanced the needed funds for the improvements of the works, and the betterment of the water supply and service to meet the requirements of the municipality and retain the customers of the company. These advances, to the amount of $37,954.98, were expended for that purpose, and thereafter the whole plant, with these additions, was operated by Mr. Venner, though nominally by the trustee. All this was done under an agreement between Venner and defendant that the latter should purchase the added property and improvements, and consent to their subjection to the lien of the mortgage for the benefit of the bondholders, and that the advances, with interest, should be first charged on the mort-

gaged property. To effectuate this agreement Mr. Venner filed a supplemental petition, asking its enforcement as a lien upon the proceeds of the foreclosure sale in priority to the claims of the bondholders, which has been allowed. The bill was taken *pro confesso,* and a decree passed for $293,353.44, the amount of the bonds with accrued interest to June 15, 1890, and of Venner's advance, with interest, and for the sale of the property. The sale was had in January, 1891, and the property was bought by Mr. Venner for $127,000. Shortly after the bill was filed complainant petitioned for and the court granted the trustee an allowance of $1,000 for its services in procuring the enlargement of the works and the increased water supply paid for by Mr. Venner, and for services in operating the works from March 14, 1888; when under the terms of the mortgage, and by reason of the mortgagor's default, they were taken possession of and operated nominally by the trustee, actually by Mr. Venner. On the same petition the court also allowed counsel for complainant $500, "for legal assistance in addition to such legal services as are required in the foreclosure of said mortgage, * * * including such services on foreclosure." Both allowances were made payable out of the proceeds of the foreclosure sale. After the sale upon a second petition for further allowances to the trustee and its counsel, a reference was ordered to ascertain and report, among other things, "what would be a reasonable allowance for fees of counsel and solicitors for complainant for services rendered for it in this suit, and also what would be a reasonable compensation to complainant, as trustee, for its services in this suit." The master reported, allowing the trustee $1,000 for its services in addition to the $1,000 previously granted, and fixed the counsel fees at $3,500 additional to the $500 previously granted for legal assistance and counsel's "services on foreclosure." After deducting these allowances, taxed costs, the deficit resulting from the operation of the works, unpaid taxes on the property, the cost of extending pipe-lines and of the improvements and additions paid for by Mr. Venner, with interest, there remains applicable to the payment of the mortgage debt of $293,-353.44, but the sum of $55,201.88. Complainant now asks confirmation of the report including these allowances. William P. Sheffield, Jr., trustee, excepts thereto, and prays that the sums awarded to the trustee and its counsel be disallowed, or, if that be denied, that a proportionate allowance be made to his counsel.

*A. Howell,* for complainant.

*H. C. Wisner,* for W. P. Sheffield.

SWAN, J., (*after stating the facts as above.*) Upon the foregoing facts, while I differ with reluctance from the conclusions reached by the able master whose report is under review, I am constrained to sustain the exception taken to the allowance of further compensation to the trustee and its counsel. The principle on which such allowances are made by courts of equity finds no foundation for its application here. While it is well settled that a trust fund is chargeable with the expenses of its own administration, and that counsel fees may be properly taxed against

such a fund, the present is not a case calling for the application of that rule. Such allowances are frequently and properly made in cases where the trust fund has been rescued from waste or destruction arising from the fraud, neglect, or misconduct of trustees, or when the energy and efforts of creditors or others interested have saved the property for those entitled. It is also true that a creditor primarily seeking satisfaction of his own debt, who has realized, by his diligence and at his own expense, a fund available for the benefit of others as well as himself, is entitled to reimbursement of his costs and expenses, either out of the fund or by a proportional contribution from those who accept the benefit of his efforts. The cases of *Trustees* v. *Greenough*, 105 U. S. 527; *Railroad Co.* v. *Pettus*, 113 U. S. 116, 5 Sup. Ct. Rep. 387; *Hobbs* v. *McLean*, 117 U. S. 567, 6 Sup. Ct. Rep. 870,—afford examples of the propriety of these allowances. In those cases costs and expenses were allowed the successful plaintiffs for the recovery or salvage of an imperiled fund, which but for the diligence and activity of the creditor or trustee would have been wholly lost to the beneficiaries or seriously depleted. They are marked, too, by the fact that success was only attained by long and laborious effort, and at great expense, against fraud, neglect, misconduct, or vigorously contested hostile claims. It is just and equitable that such meritorious service should be adequately compensated by the parties benefited. No such features characterize this case. It is a simple *pro confesso* mortgage foreclosure. The only inquiries involved in the foreclosure proceedings proper were the ascertainment of the amount due, the extent of incumbrances, and the apportionment between the parties in interest of the moneys realized by the sale. All beyond this was necessitated by Mr. Venner's well-intentioned, but unauthorized, interference with and additions to the property. That Mr. Venner voluntarily, without the co-operation of the trustee or the consent of his co-beneficiary, advanced his means for the extension and improvement of the water-works, looking to the proceeds of sale for reimbursement, and though this was done in the expectation of enhancing the selling value of the property, and had the intended effect, gives the trustee no equitable claim for the allowance made. A different question might have arisen if Venner asked compensation for his enterprise, but, even then, it would seem that, as he was a mere volunteer, and ran no risk, the interest allowed him on his investment fully compensates this service. The trustee throughout this suit has, it appears, remained passive, even inert. Though the interest coupons were made payable at its office, the trustee admits it had no knowledge of the default in the payment until about January 1, 1888, although the interest had been unpaid for several years prior to that date. The bondholders were apparently still more remiss in permitting the interest thus to accumulate until the debt had nearly doubled. The record shows no meritorious service rendered by the trustee which has not been fully remunerated by the $1,000 previously allowed.

Some of the reasons already given against further compensation to the trustee are equally cogent against the claim for further counsel fees. It

further appears that the services of counsel for which further remuneration is sought were really rendered in the interest of Mr. Venner alone, and were made necessary by his assumption of the management, operation, and enlargement of the water-works. This being Mr. Venner's individual venture, undertaken and conducted independently of the trustee and of Sheffield, I see no reason why the proceeds of sale should contribute for the expenses it entailed. Mr. Sheffield intervened in the suit, and employed his own counsel, as was his right and duty, being himself a trustee for others. *Williams* v. *Morgan*, 111 U. S. 699, 4 Sup. Ct. Rep. 638. This left counsel for the nominal trustee free to act for the interest of Mr. Venner, the only other *cestui que trust,* (at whose instance he was employed,) and limited his professional responsibility and relation to the protection of that interest, which should bear its own burdens. There are no facts in this case which distinguish it from any other ordinary foreclosure suit, where the bill is taken as confessed, or which commend the allowances prayed to favorable consideration. It results that the exceptions of Sheffield to the further allowance made to the trustee and for counsel fees should be sustained, and the amount of the rejected allowances, $4,500, should be added to the fund applicable to the payment of the mortgage debt, and apportioned between the bondholders in proportion to their interests. This apportionment will so largely increase the dividends of the bondholders as to enable them to exercise from their own means that liberality towards their respective counsel which they have urged upon the court. The facts as fully repel the claim of Sheffield for an allowance for counsel fees. The report in all other particulars will be confirmed, and an order will be entered in accordance with this opinion, and directing distribution to be made by the master accordingly.