WASHINGTON IRR. CO. v. CALIFORNIA SAFE DEPOSIT & TRUST CO. et al.

(Circuit Court of Appeals, Ninth Circuit. February 3, 1902.)

No. 663.

1. FORECLOSURE SALE—PROPERTY PASSING—CONSTRUCTION OF DECREE.

A decree foreclosing a mortgage on the property of a corporation, and directing its sale, although its language describing the property to be sold is broad and comprehensive, expressly including all property, of every name and nature, belonging to or possessed by the corporation or the receiver in the suit, cannot be construed to include money in the hands of the receiver, and such money will not pass by the sale unless the decree expressly so states.

2. SAME—EARNINGS OF RECEIVERSHIP AFTER CONFIRMATION—ESTOPPEL OF PURCHASER.

The purchaser of the property of a corporation at foreclosure sale receipted to the receiver for, "all and singular, the property in his control and possession as such receiver, as the same appears by his final account and report." Such report, which showed the net earnings of the property after confirmation of the sale, as belonging to the purchaser, was confirmed without objection, and distribution made in accordance with the receiver's account. Held, that the purchaser, by its action, and failure to object to such account, confirmed its correctness, and could not thereafter claim a larger amount as net earnings.

Appeal from the Circuit Court of the United States for the Southern Division of the District of Washington.

This is an appeal from an order and judgment distributing moneys in the hands of a receiver, and from various orders in the procedure connected therewith. It appears that on the 15th day of June, 1893, the Yakima Investment Company executed and delivered to the California Safe Deposit & Trust Company, as trustee, a certain mortgage or deed of trust upon all the property of the first-named company, consisting of a large irrigating ditch and irrigating plant and system, including lands, privileges, and franchises, in Yakima county, in the state of Washington. The purpose of the mortgage was to secure the payment of certain bonds, to the amount of $700,000, executed by the Yakima Investment Company, and delivered to the California Safe Deposit & Trust Company as trustee. Bonds amounting to $450,000, after having been authenticated and certified by the trustee, were delivered to the Yakima Investment Company. The remaining bonds, amounting to $250,000, were never issued. Of the bonds that were issued, $26,000 were deposited with the California Safe Deposit & Trust Company as part of a sinking fund provided for and required to be created by the terms of the mortgage; and the remainder of the issued bonds, amounting to $424,000, were sold to divers persons. Of these last bonds $162,000 were subsequently exchanged for receivers' certificates, known and designated as "Collins Certificates." These certificates, for which bonds were exchanged, amounted to $185,867.94. The bonds left outstanding after this exchange amounted to $262,000, which, together with interest unpaid on May 8, 1899, made the total indebtedness on account of such bonds $363,027.20 at this date. The Yakima Investment Company defaulted in the performance of the covenants, conditions, and agreements contained in the mortgage; and thereupon an action was commenced on January 2, 1895, by the California Safe Deposit & Trust Company against the Yakima Investment Company, in the circuit court of the United States for the district of Washington, Southern division, for the foreclosure of the mortgage. Upon the filing of the bill of complaint the court appointed Paul Schulze, George Donald, and Joseph H. Allen receivers of the mortgaged property. On April 18, 1895, Paul Schulze having died, an order was made and entered continuing George Donald and Joseph H. Allen receivers. On July 17, 1898, an order was made and entered discharging the receiver George Donald, and continuing Joseph H. Allen as sole receiver. During the receivership the court found it necessary, in order to preserve the property and protect the interests of all concerned, to direct the receivers to issue receivers' certificates to meet the obligations of the company and keep the plant a going concern. These certificates were made liens upon the property, and were all given priority of lien over the mortgage, and in the rank and order among themselves as set forth and described in the decree of foreclosure and sale made and entered by the court on May 8, 1899, as follows:

| | |
|---|---|
| Expense receivers' certificates | $ 60,514 53 |
| Purchase-money receivers' certificates | 62,082 00 |
| Collins receivers' certificates | 188,766 45 |

$311,362 98

The decree of foreclosure and sale required that the Yakima Investment Company should pay or cause to be paid to the California Safe Deposit & Trust Company before the 3d day of June, 1899, a sum sufficient for the payment of costs and disbursements in the suit, and the expenses incurred by, and compensation of, the trustee, and the fees and compensation of complainant's solicitors and counsel in the suit, and the expenses of the receivership of the mortgaged property, including the compensation of the receivers and their solicitors and counsel, and the payment of the receivers' certificates and outstanding bonds and coupons in the order of their priority. It was further provided in the decree that in default of the payment by the defendant, or any one claiming under it or for its account, of the sum of money and interest mentioned and directed to be paid by the decree within the time therein provided, the lands, franchises, water rights, irrigating canals and ditches, and all the property mentioned and described in the decree, should be sold as an entirety, and in one lot and parcel, absolutely and without redemption, and subject only to confirmation by the court.

A master in chancery was appointed by the court to make and conduct the sale, and to execute and deliver the deed of conveyance and transfer of the property upon an order confirming the sale, and upon payment or settlement of the purchase price. The court having determined that it could not authorize a sale of the property for a price less than a sum sufficient to pay in full all costs and expenses of the litigation, and all the obligations of the receivers incurred by authority of the court, including the principal and interest of all receivers' certificates so issued, and it being represented to the court by the parties interested that the sum of $335,000 would be sufficient and ample to pay all costs, expenses, and obligations incurred by order of the court, it was provided in the decree that the master in chancery should not receive, entertain, or accept any bid for the property less than the sum of $335,000; and, unless said sum should be bid for the property, the master in chancery was directed to adjourn the sale, and apply to the court for further instructions. It was further provided by the decree that the funds arising from the sale of the property should be applied: (1) To the payment of the costs and disbursements of the suit, and of all proper expenses attendant upon such sale or sales, including compensation of the master in chancery, and the payment of all charges, compensation, fees, allowances, and disbursements of said complainant, and the compensation, fees, expenses, and disbursements of its solicitors and counsel, and of the receivers, and their solicitors and counsel, and also all other proper allowances, compensation, and disbursements to the parties or their counsel; all such payments, however, to be thereafter allowed and taxed by the court. (2) The balance of the funds realized from said sale to be applied to the payment (a) of the principal and interest of said expense 'receivers' certificate in full; and any balance then remaining to be applied (b) to the payment of the principal and interest of said purchase-money receivers' certificates in full; and any balance then remaining to be applied (c) to the payment of the principal and interest of said Collins receivers' certificate in full; and any balance then remaining to be applied (d) to the payment of the principal and matured coupons of the 524 bonds issued and then outstanding under said mortgage or deed of trust, in full. It was further provided that if the proceeds of said sale should not be sufficient to pay all of the said receivers' certificates, bonds, and coupons in full, then and in that case so much of the proceeds of said sale as should be applicable to the payment of any one of said classes of said securities should be distributed among the holders of all of the receivers' certificates of that class, or the holders of the bonds and coupons, as the case might be, pro rata, according to the amounts of such receivers' certificates or bonds and coupons held by them.

After a detailed description of the property directed to be sold, the decree contained the following explanation of the purpose of the decree: "It is the intention and meaning to describe and embrace herein, and that there shall be sold and conveyed pursuant to this decree, all of the property, of every name and nature, belonging to or possessed by said the Yakima Investment Company and the receivers and receiver in this suit, including all of the water appropriations and water rights, and all of the canals, laterals, branches, and ditches, including the headworks thereof, and all of the rights of way, franchises, licenses, privileges, and easements, and all of the books, accounts, records, tools, implements, instruments, and apparatus, and all of the land-sale contracts, and all of the water contracts, and all moneys due and unpaid and to become due for the sale of lands or the sale of water or the furnishing of water to other persons, and all moneys due and unpaid and to become due by virtue of any deed or contract heretofore made by said the Yakima Investment Company, or its predecessors in interest, or said receivers or receiver, and all lands belonging to or acquired by said the Yakima Investment Company, or said receivers or receiver, all of which property shall be affected by this decree and pass to the purchaser or purchasers under this decree, and pass by and be construed to be included within, the conveyance or conveyances made pursuant to this decree, in all respects as though the same, and each item, portion, and parcel thereof, had been particularly and specifically enumerated and

set forth in this decree, notwithstanding any mistakes, omissions, or inaccuracies in the particular description of any thereof in this decree; and no words of particular description contained in this decree shall be construed to in any wise limit these words of general description."

The Yakima Investment Company failed to pay the sum decreed during the time provided in the decree, and thereafter an order was entered for the sale of said property, and the same was sold by the master in chancery on the 5th day of March, 1900. At the master's sale J. Dalzell Brown purchased the property for the sum of $335,000. On the 4th day of May, 1900, an order was entered by the court confirming the sale of the property to J. Dalzell Brown. On the 12th day of May, 1900, the purchaser having paid $35,000 in cash on account of the purchase price, it was ordered by the court that, the balance of said purchase price being payable at such time or times and in such manner as the court should direct, the purchaser was required on or before the 23d day of May, 1900, to pay and make good the unpaid balance of $300,000 of the purchase price of the property, by paying to the clerk of the court, or by depositing to the credit of, and subject to the orders of, the court, in the National Bank of Commerce of Tacoma, at Tacoma, Wash., a sum of money equal to the difference between $300,000 and the amount of principal and interest to the 23d day of March, 1900, of the receivers' certificates paid in and deposited by the purchaser. Under this order the purchaser deposited in the registry of the court the sum of $74,277.20 in cash, in addition to the $35,000 deposited in the registry of the court on March 6, 1900, on account of the purchase price, making the total cash payment $109,277.20; leaving $225,722.80 as the amount deposited by the purchaser in receivers' certificates. On the 19th day of May, 1900, the court entered an order reciting that J. Dalzell Brown having, pursuant to the requirements of the order made on the 12th day of May, 1900, paid into the court the balance of the purchase price of the property, and that the funds arising from the sale being ready for distribution, the court proceeded to make, and did make, a partial distribution of the funds in the registry of the court as follows: To the master in chancery, in full for his services, $4,000; to the complainant, on account of its services and expenses in the discharge of the trust, $2,500; to one of complainant's solicitors for expenses, $2,500; to the vice president of the defendant company for his services in the execution of deeds, $500, and for his services as solicitor and counsel, $500; to other counsel and solicitors, for services performed in relation to the trust, sums aggregating $2,000. The order reserved for further consideration and future determination the settlement, allowance, and payment of fees and compensation of the solicitors and counsel for the complainant in the suit, and the question of making further allowance to the complainant for its services and disbursements in discharge of the trust, and the settlement, allowance, and payment of the compensation of the receiver; and the order appropriated and set apart for the purpose of paying the compensation to be allowed to the solicitor and counsel for the complainant and to the receiver, and any additional allowance to the complainant as trustee, such money and funds as should remain in the hands of the receiver after the settlement of the trust and the payment of the receivers' bills; and the receiver was ordered and directed to pay to the clerk of the court, subject to the order of the court, all moneys remaining in his hands in the settlement of his trust after the payment of his bills. The receiver was further ordered to proceed forthwith to make and file his final account as soon as practicable, and to deliver to the purchaser or his assigns, upon demand, the possession of all property then held by him, subject to all settlements and adjustments which the receiver ought to make in respect thereto, and subject to any contracts which he had made with respect thereto pursuant to the order of the court.

On the 25th day of June, 1900, J. Dalzell Brown conveyed to the Washington Irrigation Company the property purchased by him at the foreclosure sale. On the 26th day of July, 1900, the receiver delivered to the Washington Irrigation Company all the property purchased by Brown at the foreclosure sale, taking the following receipt:

"North Yakima, July 26, 1900.

"Received this day from Joseph H. Allen, receiver of the Yakima Investment Company, all and singular, the property in his control and possession as such receiver, as the same appears by his final account and report, of even date herewith, and papers attached thereto.

"Washington Irrigation Co.,
"By J. R. Walthew, Cashier.,

"Successors in Interest to J. Dalzell Brown, Purchaser at the Master's Sale of the Property of the Yakima Investment Company Made March 5, 1900."

In the final account of the receiver filed with the clerk of the court on July 27, 1900, and referred to in the receipt of the Washington Irrigation Company, is a statement of account, showing a balance in his hands of $11,506.70, which was thereupon paid to the clerk of the court; the latter giving to the receiver his receipt therefor. This final account contains a statement showing that the receiver had kept a separate account of his management of the property from May 4, 1900, the date when the sale was confirmed by the court, to July 27, 1900, when the property was transferred to the Washington Irrigation Company. This statement shows that there was due the Washington Irrigation Company, as the net earnings of the property during this period, the sum of $1,067.63, and that this amount was included in the balance of $11,506.70 on hand when the receiver closed his accounts.

On the 22d day of August, 1900, the Washington Irrigation Company filed in court a petition for an order directing the receiver of the property and the clerk of the court, or such parties as might have possession of a certain described fund, to pay to the petitioner the sum of $14,600.76; basing its petition upon the following alleged facts: That at the time of said foreclosure sale there was in the hands of the receiver of said property the sum of $8,834.11; that at the time of said sale, and prior to the time that the property was struck down to said J. Dalzell Brown, said Brown, by E. F. Blaine, attorney, inquired of the master in chancery whether he was selling all the cash then in the hands of the receiver, and said master stated that he was selling everything in the hands of said receiver, including the cash; that after said sale the receiver continued to operate the property, and received cash upon contracts then outstanding, which contracts were sold to said Brown; and that said receiver made other sales of land, which was sold to said Brown at said sale, receiving from said sources between the date of the sale of the property to said Brown, namely, March 5, 1900, and the date of the confirmation of said sale, namely, June 18, 1900, the sum of $9,156.62; that between said dates the receiver disbursed, as cash upon pay rolls and cash disbursements on account of vouchers, the sum of $4,704.52; that in said sum was included salary to said receiver and his personal expenses. The petitioner claimed that, by virtue of the transfer from said Brown to it, said Washington Irrigation Company was entitled to receive from said receiver, or the clerk of the court, the amount in the hands of the receiver at the time of said sale, and the net amount received from all sources between date of sale and confirmation of sale, to wit, $14,600.76. To this petition the receiver filed an answer, in which he admitted that there was in his hands a certain sum of money which he had set forth in his final account, but alleged that in making up his final account he did not separate the amount in hand at the time of the sale from the other amount which was received at that time, and he was unable to determine said amount with certainty. He admitted that he continued to operate the property, but he averred that he did so under the order and direction of the court, and that he kept an account of the sales, receipts, and disbursements, and that the same was contained in his final account. He denied that the petitioner was entitled to receive the sum of $5,826.65, or any sum of money other than the sum of $1,067.63, and alleged that the said sum of $1,067.63 embraced all the money from all sources received by said receiver to which the petitioner was entitled; and he denied each and every allegation in said petition contained, except as stated in the answer to said petition. He denied that the Washington Irrigation Company

was entitled to receive from the receiver or from the clerk of the court all the moneys or cash in the hands of the receiver at the date of the sale, but he averred that the same were taken into account in the matter of cash, and accounted for in the final account. The receiver, for a further answer, referred to and set out the proceedings in court on the 19th day of May, 1900, when the proceeds of the sale were distributed by the court, and further allowances and payments reserved for further consideration. This answer was duly verified by the oath of the receiver. The petition and answer were brought to the attention of the court on September 11, 1900, when the court refused to hear said petition, or proof in support thereof, or argument of counsel upon the same, because the matters involved therein had been previously adjudicated by the court. It was accordingly adjudged and decreed that the petition should be denied and dismissed. Counsel for petitioner thereupon excepted to the ruling of the court, and the exception was allowed. On the same day the application of the receiver for the approval, settlement, and allowance of his final account was heard by the court; and it appearing that no exceptions or objections had been filed to said report, and the time for filing exceptions and making objections having expired, the court examined the final account of the receiver, and found and adjudged that the same was true, and accordingly approved the same, and by order discharged the receiver. Counsel for the Washington Irrigation Company thereupon appealed to this court from the order confirming the sale of the property, dated May 4, 1900, which impaired, affected, or denied the right of the purchaser to receive all the net proceeds of the property over and above the purchase price paid by the purchaser which came into the hands of the receiver after March 5, 1900; from the order of the court directing the purchaser to complete the payment of the purchase money of said property sold at the receiver's sale dated May 12, 1900, which impaired, affected, or denied the right of the purchaser or his grantee to all the funds in the receiver's hands on the date of said sale, or which came into his hands after said sale, as proceeds of the operation of the property or purchase money of items and parcels of the property sold by the receiver before and after the sale; from the order dated May 19, 1900, directing the distribution of the funds in the registry of the court arising from the sale of the property; and from the orders dated September 11, 1900, distributing the funds remaining in the hands of the clerk, except that portion thereof which ordered payment of a certain sum to the appellant. No objection was made to the final account of the receiver, and no appeal was taken from the order of the court approving the account and discharging the receiver.

Charles E. Shephard and E. F. Blaine, for appellant.

John B. Allen and Joseph S. Allen, for appellee Joseph S. Allen.

Before McKENNA, Circuit Justice, and ROSS and MORROW, Circuit Judges.

MORROW, Circuit Judge, after the foregoing statement of facts, delivered the opinion of the court.

The appellant assigns as error the action of the court below in (1) denying to the Washington Irrigation Company, appellant herein, the moneys in the hands of the receiver at the date of sale; (2) denying to the appellant the moneys collected by the receiver from all sources between the date of sale and the date of confirmation of sale, less the operating expenses.

The language of the decree of foreclosure and sale was necessarily broad and comprehensive to include all the property to be sold. The property was a going concern. The canals and ditches were in full operation, distributing water for irrigation purposes under continuing contracts, that were to be transferred, with the other prop-

erty, to the purchaser. The purpose of the decree was to sell all this property in the hands of the receiver, but not to sell funds in the possession of the court. As said by the court in Strang v. Railroad Co., 23 Fed. Cas. 219 (No. 13,523):

"The surplus earnings of a railroad in the hands of a receiver are not the property of the railroad company, and are not included in a general description of its property. The possession of the money is in the court, and the equitable title to it is in the creditors of the railroad company."

This doctrine is equally applicable to property of the character involved in this case. Moreover, the primary object of a judicial sale of mortgaged property is to convert all the property into money for distribution among the creditors. The income and surplus earnings of the property need not be sold. They are already in shape for distribution, and are properly applied to the payment of the expenses of operating the property, and to defray the expenses incident to the foreclosure proceedings. These expenses are always to be paid first, whether the funds for this purpose are derived from income, or from the proceeds of the sale of the property. To sell the money in the hands of a receiver would, under such circumstances, be an absurd procedure. "A court should not be presumed to order so futile a thing as the selling of money, unless its decree to that effect is clear and specific." Strang v. Railroad Co., supra.

Appellant, then, must show its right to receive the money in the hands of the receiver at the date of the sale upon other grounds than that such money passed to it by reason of the sale, as part of the proceeds of the sale. The decree must provide for it in express language. No mere inference drawn from general terms can justify such a claim, and no declaration of a master in chancery can enlarge the terms of the decree. The circuit court was therefore right in denying the petition of the Washington Irrigation Company for the moneys in the hands of the receiver at the date of the sale.

With respect to the moneys collected by the receiver after the date of the confirmation of the sale by the court, no controversy as to the right of the appellant to the net earnings of the property is presented by the record. The only question is as to the amount, and perhaps as to the date when the purchaser's right accrued. The appellant claims that the amount is $5,826.65, while the final account of the receiver states the amount to be $1,067.63. This controversy has been foreclosed by the fact that when the Washington Irrigation Company, on July 26, 1900, receipted to the receiver for the property purchased by its grantor at the master's sale, it described the property as, "all and singular, the property in his [receiver's] control and possession as such receiver, as the same appears by his final account and report." The receiver's final account showed the amount due to the Washington Irrigation Company to be the sum of $1,067.63. The appellant received the property thus described without objection, and, by the terms of its receipt, confirmed the correctness of the account in all respects. The receiver's final account was filed with the court on July 27, 1900; and on August 8, 1900, the court entered an order that the parties to the proceedings

should have 20 days in which to file exceptions to the account, or to enter objections thereto. No exceptions or objections to the account were ever filed or noted, and on September 11, 1900, the account was approved and the receiver discharged. The order distributing the funds remaining in the hands of the clerk was based upon the final account, and, if erroneous, could only be corrected by a correction of that account. The effect of accepting the property without objection, under these circumstances, extended to all the previous orders, and renders appellant's objections thereto unavailing.

The orders of the circuit court are therefore affirmed.