[No. 1445, September 14, 1912.]

LAS VEGAS RAILWAY & POWER CO. et al., Appellants, v. THE TRUST CO. OF ST. LOUIS COUNTY, Appellees.

### SYLLABUS (BY THE COURT).

1. Under the rule that a trust estate must bear the expenses of its administration, where one of many persons having a common interest in a trust fund, at his own expense, takes proper proceedings to save it from distribution and to restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund or by proportional contribution from those who accept the benefits of his efforts.

2. Property of a corporation was mortgaged for $300,000. The majority bondholders owned $262,000, and the minority $38,000. None of the parties contemplated that the property was worth half of the amount of the bonded debt, and in foreclosure proceedings it was sold at the first sale to a representative of the majority for $65,000. On objection by the minority, both to the foreclosure decree, and to the sale, the decree was sustained; but a new sale was ordered, at which the majority bondholders purchased for $126,500, which they paid by surrendering an equal amount of the bonds. Held, that the proceedings of the minority for the vacation of the foreclosure decree and for a new sale were not for the benefit of, but were adverse to, the majority, and hence the minority was not entitled to an allowance for counsel fees out of the fund.

3. Where, on a prior appeal, it had been held that there were no grounds on which to vacate a decree for the foreclosure of a corporate mortgage securing bonds, an alleged bondholder could not thereafter intervene to dispute the

truth of a finding in the decree as to the ownership of certain of the bonds.

4. Where a breach of trust with reference to certain bonds secured by a corporate mortgage did not occur until after final decree fixing the status of the parties and finding that G. was the owner of the bonds, the decree could not be impeached by showing that such finding was untrue to the extent that G. held as trustee only and not as owner.

5. Where a mortgage foreclosure sale to C. was vacated on appeal and a new sale ordered under the same decree, the court, on confirming the second sale, should order an accounting of the rents and profits of the property covering the period between the first and second sale while it was in possession of and being operated by the purchaser at the first sale.

Appeal from District Court, San Miguel County.

VEEDER & VEEDER, Las Vegas, N. M., and W. B. & FORD W. THOMPSON, St. Louis, Mo., for appellants.

The petition of appellants, praying for an allowance out of the common fund in the hands of the court to W. A. Buddecke, for his costs and expenses and attorney's and counsellor's fees, incurred in prosecuting for and on behalf of the Las Vegas Railway and Power Co., the proceedings to set aside the first sale should have been granted and an examiner appointed, as prayed for, and the allowance made. Hubbard v. Camperdown Mills, 1 S. E. Rep. 5; Bound v. South Carolina Ry. Co., 59 Fed. 509 (512); Central Railroad v. Pettus, 113 U. S. 116 (122-124-5); Dodge v. Tulleys, 144 U. S. 451 (457); Hobbs v. McLean, 117 U. S. 567 (582); Burden Central Sugar Refining Co. v. Lewis Sugar Mfg. Co., 87 Fed. 810; Central Trust Co. v. Condon, 67 Fed. 84 (110); Bound v. South Carolina Railway Co., 43 Fed. 404; Warrell v. Railroad Co., 18 Atl. Rep. 1014; Central Trust Co. v. Valley Ry. Co., 55 Fed. 903; Perea v. Harrison, 7 N. M. 666 (667); Hobbs v. McLean, 117 U. S. 567; Trustees v. Greenough, 105 U. S. 527; McCourt v. Singers-Biggers, 145 Fed. 103;

In re Weed's Estate, 30 Atl. 273; Woodrop v. Weed, 154 Pa. St. 307; Young v. Weed, 154 Pa. St. 316; Strang v. Montgomery, etc., 23 Fed. Cases No. 13523; Washington Irr. Co. v. California Safe Deposit & T. Co., 115 Fed. 20; Cyc. vol. 27, pp. 1626, 1650, 1730.

There was nothing in the agreement under which the bonds were held that authorized the pledgee to sell the bonds, so that there was no consent given under that agreement between the pledgor and pledgee to dispose of the bonds, and hence the delivery of said bonds to Thorpe was void for want of personal notice to the pledgor to redeem before sale. Edwards on Bailments, 250, 251; Wilson v. Little, 2 Comst., 443; Stearns v. Marsh, 4 Denio, 230; Brown v. Ward, 3 Duer 660; Milliken v. Dehon, 10 Bosw. 325; 2 Kent's Comm. 583; Story on Bailments, secs. 318, 345; Markham v. Jaudon, 41 N. Y. 235; Luckett v. Townsend, 3 Texas 119; Tyler on Usury, Pawns and Loans, 581, 594, 595, 596, 597; Elwell v. Tatum, 6 Texas Civ. App., 397; 25 S. W. Rep. 434.

The fact that the bonds were negotiable does not effect the right of Garrels to the bonds. Parsons v. Jackson, 9 Otto, 484; First Natl. Bank v. Scott County, 14 Minn. 77; Arents v. Commonwealth, 18 Grattan, 750; Newell v. Gregg, 51 Barb. 263; Fenton v. King, 4 Allen 582; 5 Cyc. 798.

Under the intervention filed in this case these bonds, having been delivered by a trustee to Thorpe with notice of the trust under which Garrels held the bonds, he is bound by the trust. Hill on Trustees, 164; Mead v. Orrey, 3 Atk. 238; Earl Brook v. Buckeley, 2 Ves. 498; Taylor v. Stiffert, 2 Ves. Jun. 437; McLaurine v. Monroe, 30 Mo. 462; Truesdale v. Callaway, 6 Mo. 605; Thompson v. Reuve, 12 Mo. 157; Paul v. Chouteau, 14 Mo. 580; Martin v. Bank of Alabama, 31 Ala. 115; Butcher v. Stapleton, 1 Vern. 363; 1 Story's Eq. sec. 399; Speck v. Riggin, 40 Mo. 405; Beattie v. Butler, 21 Mo. 328; Vaughn v. Tracey, 22 Mo. 418; Foster v. Brashears, 55 Mo. 22; Fellows v. Wise, 55 Mo. 413; Muldrow v. Robinson, 58 Mo. 507; Majors v. Bickley, 51 Mo. 231; Colebrook Collateral

Ry. & P. Co. v. Trust Co., 17 N. M. 286.

Secruity, 1st ed. secs. 87, 117, 132; Story's Equity Jurisprudence, 321, 322, 323; Colebrook, Collateral Security, sec. 118; Jones on Pledges, secs. 610 and 636; 2 Perry on Trusts, secs. 602-o, 782; Porter v. Graves, 104 U. S. 174; Laclede National Bank v. Richardson, 156 Mo. 270; Hagan v. Continental National Bank, 182 Mo. 319, 31 Cyc. 879.

Where a suit has been begun by the pledgor for the enforcement of the right of action before his pledge of it to the pledgee, upon his obtaining judgment, the pledgee or his assignee, will be entitled to intervene and claim the proceeds, without allowance to the pledgor out of the fund for the expenses of his suit. 31 Cyc. 886; McDougal v. Boiler Co., 88 Fed. Rep. 217; 31 Cyc. 880, 881; Rule 57 and Rule 58, Rules of Practice in Equity; 16 Cyc. 358; Secor v. Singleton, 41 Fed. 725; 22 Am. & Eng. Enc. of L., 2nd ed. 865; Conrad v. Fisher, 37 Mo. App. 403; Dickey v. Porter, 203 Mo. 25; Springfield to use v. Weaver, 137 Mo. 670.

WILLIAM G. HAYDEN and CHARLES A. SPIESS, for Appellant.

Counsel fees and expenses of the thirty-eight contesting bond-holders incurred in setting aside the former sale should not be charged against the purchase price generally. Lamar v. Hall & Wimberly, 129 Fed. 79; Trustee v. Greenough, 105 U. S. 527; Central R. R. v. Pettus, 113 U. S. 116; Farmers, etc., Trust Co. v. Green, 79 Fed. 222; Hand v. Railroad, 21 S. C. 162; Hobbs v. McLean, 117 U. S. 567; Grimball v. Cruse, 70 Ala. 524; Roselieu v. Delechaise, 5 La. Ann. 481; William Firth Co. v. Millen Cotton Mills, et al., 129 Fed. 141; Gillespie v. Piles & Co., 178 Fed. 886; Thompson on Corporations, 7056.

Barthels is not entitled to follow the 152 bonds and impress any alleged trust thereon as Thorpe was a bona fide purchaser. Cyc. vol. 39, p. 559.

OPINION OF THE COURT.

PARKER, J.—This case was before the Territorial

Supreme Court, and is reported in 15 N. M. 634, 110 Pac. 856. Upon that appeal two propositions were determined, viz: First, that there was nothing in the record authorizing the vacating of the final decree of foreclosure, and, Second, that by reason of the circumstances stated in the opinion, the sale under the final decree should be vacated and a resale of the property had. A resale of the property was had and the case is now before this court upon an appeal by the same parties who prosecuted the former appeal. The objection of the appellants in the former appeal, who were the minority bond holders of the defendant corporation, to the final decree, was based upon an alleged fraud of the majority bond holders in causing the foreclosure proceedings to be instituted, and in securing the final decree of foreclosure, and upon the proposition that the foreclosure proceedings were improvidently and illegally instituted by the trustee under the mortgage. The objection to the sale was based upon the ground of inadequacy of purchase price. The objections to the decree were not sustained, but the sale was set aside for the reason that it did appear that the purchase price was inadequate. It is apparent from the record that in so far as the attack upon the decree of foreclosure is concerned, the attitude of the appellants has been adverse to the appellees throughout. The charge of fraud against the majority bond holders was not sustained and, therefore, no benefit resulted to anyone from the attempt to vacate the decree. At the second sale the Las Vegas Light and Power Company became the purchaser of the property at an advance price of $61,500 more than the property brought at the first sale. This last purchaser used the same 262 bonds of the Las Vegas Railway & Power Company in the purchase of the property, that Dr. Cunningham used at the first sale. The minority bond holders now seek to have allowed and paid out of the common fund their counsel fees for services rendered in securing the resale.

Appellants base their claim upon the proposition that, having created a fund by increasing the original fund from $65,000, the purchase price at the original sale, to $126,-500, the amount of the purchase price at the second sale,

and having brought the same within the jurisdiction of the court for distribution, they are equitably entitled to allowance out of the fund for reasonable counsel fees.

The doctrine upon which the claim is founded is well established. Thus in 'Trustees v. Greenough, 105 U. S. 527, a leading case, it is said:

"It is a principle that a trust estate must bear the expenses of its administration. It is also established by sufficient authority, that where one of many parties having a common interest in a trust fund, at his own expense takes proper proceedings to save it from distribution and to restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund itself, or by proportional contribution from those who accept the benefits of his efforts."

See also, M'cCourt v. Singer-Bigger, 145 Fed. 103; R. R. Co. v. Pettus, 113 U. S. 116.

The application of the doctrine to the facts in this case is denied by appellees, upon the ground that the proceedings by appellants were at all times adverse to them, and they received no benefit from the same.

The proceedings, in so far as they sought to vacate the decree on the ground of alleged fraud, were evidently adverse to the majority bond holders who had secured the decree. In so far as the proceedings were directed to securing a resale of the property, in a sense they were not antagonistic to the majority, as such, because the latter must necessarily share in the benefits of an increased selling price of the property. But from another point of view, they were adverse. It is to be borne in mind that at the time these proceedings were begun the majority bond holders had ceased to be, in any substantial sense, bond holders, and had become purchasers of the property. Their common interest with the minority had ceased, and they were interested in having the sale confirmed, not in having it vacated. It was not in their interest that the proceedings were brought, they having elected to take the property over in substitution for the bonds. It was in fact in the sole interest of the minority, that a larger sum might

be realized on their bonds, that the sale was sought to be set aside, and a resale obtained. The benefit to the majority, if any resulted, was incidental and formed no part of the basis for the proceedings. Nor can we see how the majority received any benefit from the proceedings. The property was mortgaged for $300,000, and the majority owned 262, and the minority owned 38 of the bonds. None of the parties contemplated that the property was worth half the amount of the bonded debt. It had sold for $65,000 at the first sale, and sold for $126,500 at the last sale. The majority, after surrendering bonds in the amount of $126,500 in the purchase of the property by the Las Vegas Light & Power Company, a corporation organized in their interest, still retained worthless bonds in the amount of $135,500. It was immaterial to them whether the property sold for $65,000 or $262,000 the amount of their bonds, except as the amount payable to the minority in cash for their bonds, might thereby be increased or diminished. So the alleged swelling of the fund was, so far as the majority was concerned, a mere form, realizing nothing of substance to them. Indeed, the majority were injured by the proceedings. Beside the expense of resisting the resale, they were compelled to pay the minority several thousand dollars more than they had to pay under the first sale. It is to be remembered in this connection that the charge of fraud was not sustained against any of the majority, the sale having been vacated by reason of the conduct and activities of one Garrels who, until just prior to the sale, had been a bond holder, and who had sold his bonds without the knowledge of the minority.

Under these circumstances, the minority have no right to charge the fund with their expenses for counsel fees. The principle upon which expenses of one are chargeable upon a fund belonging to others, is the principle of representation or agency. In cases of trustees, the right to charge the fund arises out of the relations of the parties, and is necessarily contemplated in the eyes of the law, when the relation of trustee and beneficiary is created. In cases of

creditors' bills and the like, the agency of one for others
having a like interest and situation is implied from the
acceptance of the fruits of the litigation. But where a pro-
ceeding is prosecuted adversely to another's interest, or is
solely in the interest of the person or persons prosecuting
the same, or is fruitless, no implication of agency arises,
even though the persons whose fund is sought to be charged
with the expenses may be incidentally benefited. This is
simply the law of contract, founded in reason and justice,
and finds sanction in the reported cases. Thus in Hand v.
R. R. Co., 21 S. C. 162, 178, it is said:

"The underlying principle in all these cases, where one
has been allowed compensation out of a common fund be-
longing to others, for expenses incurred and services ren-
dered in behalf of the common interest, is the principle of
representation or agency. Where such compensation has
been allowed, the party claiming has been in some way
the recognized and authoritative representative of the
whole, and therefore authorized to contract for the whole.
Thus, executors, administrators and other trustees, being
the legal representative of the parties interested in the trust
fund or property, have been usually allowed credit for all
necessary and reasonable charges incurred by them in the
proper management and protection of the trust fund. So,
too, where the parties having a common interest, or are
very numerous, and one of the class institutes proceedings
for himself and all others belonging to that class, these
latter afterwards coming in and claiming to share in the
successful result, the law, regarding the first party as the
representative of the latter, has recognized his right to
charge to the common fund or property, such reasonable
and proper expenses, including counsel fees, as he may
incur for the common and general interest. This princi-
ple has been frequently enforced in behalf of the plaintiff
in creditors' bills, and it also applies where the common
interest belongs to the defendants, who, being so numer-
ous that one is selected and brought in by regular process
as a representative of the class, while the others are called
in by advertisement, who may come in or not as they
choose; but if they do come in, must do so under the prin--

ciple that the common fund shall be taxed with the reasonable expenses incurred by the representative . Thus it will be seen that such charges are allowed, not simply and alone because services have been rendered which have been beneficial to the common interest, but upon the ground that they were rendered by the authority of those having the common interest exercised by the representative, the compensation for which was to be chargeable to the fund protected or recovered."

In Lamar v. Hall Limberly, 129 Fed. 79, it is said:

"In such cases the counsel who is employed by certain creditors or other beneficiaries of the trust, and who sues for them and others situated as they are, in a sense represents all of them; those suing having assumed to retain him for all. There is usually an express promise by the parties plaintiff to pay their solicitor, and, if not, a promise to pay him is implied by the performance and the acceptance of the solicitor's services. It seems equally clear that the creditors or other beneficiaries of the trust, who come into court and accept a part of the proceeds of the property recovered or preserved by the litigation, are bound by an implied promise to pay out of the proceeds of the trust fund received by them, their proportionate part of the reasonable compensation allowed the solicitor who successfully conducted the litigation. The underlying principle upon which those who do not appear as plaintiffs are charged with a proportionate part of the solicitor's fees, or upon which such fees are charged on the fund, is that the plaintiffs represented the others for whom they also sued (citing cases); and this agency and the ratification of the course taken are usually shown by the appearance in court of the other creditors or beneficiaries, and their claiming to share in the result of the suit. * * * * * * * The purpose of the bill was antagonistic to the lien creditors and to the majority of the stock holders controlling the Millen Cotton Mills. In fact, both were charged with a fraudulent scheme to sacrifice the property. This charge was not sustained, and we are justified in saying that it was unfounded. The property was sold pursuant to the prayer of the creditors' bill and contrary to the prayer of

the minority stockholders' bills. These facts seem conclusive against petitioners' claim on the trust fund. Hobbs v. McLean, 117 U. S. 567; 6 Sup. Court, 870; 29 L. Ed. 940.. It is true that, by the opposition of the minority stock holders to the confirmation of the first sale, the bid was increased from $50,000 to $90,000, but at both sales it was purchased by the trustee for the lien holders, and at both sales it failed to bring enough to pay the lien debts. It made no difference whether the property sold for $50,-000 or $90,000. It was paid for in either case by a credit on debts which were worthless, so far as any balance was concerned which was left unpaid after the application of the amount of the bid as a credit. The interposition of the minority stock holders was of no benefit to the lien creditors. On the contrary, it was to their detriment, more than $2,000, the amount of the increased costs of the litigation."

See also Farmers' Loan & Trust Co. v. Green, 79 Fed. 222; Bound v. S. C. R. R. Co., 59 Fed. 509; Burden-Central Sugar Refining Co. v. Ferris Sugar Mfg. Co., 87 Fed. 810; Newcastle N. Ry. Co. v. Simpson, 26 Fed. 133; In re Baxter and others Bankrupts, 28 Fed. 452; B. & O. R. R. Co. v. Brown, 79 Md. 442; Atty. General v. Insurance Co., 91 N. Y. 57; Jacksonville, .etc., Ry. Co. v. American Construction Co., 57 Fed. 66; Boston etc., Trust Co. v. Waterworks, 47 Fed. 8; Central Trust Co. v. Valley Ry. Co., 55 Fed. 903; Kimball v. Bible Society, 65 N. H. 139, 161; In re Holden, 126 N. Y. 589, 594; Hubbard v. Camperdown Mills, 1 S. E. 5; Gillespie v. Piles & Co., 178 Fed. 886; 5 Thompson on Corporations, sec. 7056; 3 Cook on Corporations, sec. 879.

In these cases and text books, various phases of the question in hand and various applications of the principle mentioned, are stated, and they all recognize the distinctions heretofore pointed out.

It follows, therefore, that the action of the court in disallowing counsel fees for the appellants was correct.

Counsel for appellants complain of the action of the court in refusing to allow one August Bartels to intervene in the cause.

It appears that one Garrels was the holder of 150 of the bonds of the Las Vegas Ry. & Power Co., as pledgee or trustee for said Bartels. So far as appeared from the record, down to and including the final decree, he was the absolute owner and holder of the same. As such holder, he applied to the trustee and secured a proceeding resulting in the foreclosure decree. In that decree Garrels was adjudged to be the holder of 152 of the bonds. Just prior to the sale, as before stated, Garrels disposed of his holdings, so that Dr. Cunningham, at the sale, when he purchased the property, was the holder of 262 of the bonds. Following the sale, Bartels with others filed both a motion to vacate the sale and a protest against its confirmation. The entire scope and object of the motion and protest was to secure a resale of the property on the ground of inadequacy of selling price, and the affidavits accompanying the application were devoted to showing the means by which competitive bidding was prevented, and to showing the interest some of the moving parties had in a resale, owing to claims they had to payment out of the proceeds of sale. In his affidavit accompanying the protest against confirmation, Bartels shows the circumstances under which Garrels secured the 150 bonds from him, and states that they were held as a pledge or collateral security for some notes of the Las Vegas Ry. & Power Co., to the Franklin Bank of St. Louis. All of these facts were before the Territorial Supreme Court upon the former appeal, and that court said:

"The appellants further contend that there was fraud in the inception of the suit; this contention is not borne out by the record. While it is true that there may have been some sharp practice indulged in by one G. W. Garrels in getting possession of the bonds from the then owner. August Bartels, one of the protestants against the confirmation of the sale, yet the fraud, misrepresentation, and breach of trust set out by the affidavits and exhibits filed by the protestants go to the sale rather than to the proceedings prior to the entry of the decree of foreclosure. The record shows that there was no question of fraud until long after the decree was signed. All parties were unani-

mous that a foreclosure was necessary. There was therefore no such showing of fraud as would have warranted the court in vacating the decree of foreclosure, even admitting that the motions were timely."

We have then a case of the attempted intervention in a foreclosure proceeding for the purpose of disputing the truth of a finding in the decree of foreclosure as to the ownership of a part of the bonds secured by the mortgage. This cannot be done in view of the holding on the former appeal that there were no grounds shown upon which to vacate the decree, if, indeed, under any circumstances like the present, it could be done. There is no way in this case, to now award the Garrels bonds to Bartels without contradicting the final decree which determined for the purposes of this case that Garrels was the holder of these bonds and had all the rights of bidding at the sale, and to distribution of the proceeds of sale awarded to other bond holders. Bartels, therefore, is remediless in this case. The questions as to the rights of pledgor and pledgee, as to when, or when not, a person is a bona fide purchaser of negotiable paper, and as to when trust property may be followed into the hands of purchasers with notice, all advanced by counsel for appellants, are not involved. The further argument is advanced that this is a case in principle like one where, after the filing of a bill, a change of interest in the parties would render the decree ineffective, the facts may be brought forward by way of supplemental bill, or one of that nature, and that the petition in this case fulfills that requirement. But the principle is plainly inapplicable. There was no change of interest or status of the parties after the filing of the bill, and before decree. It was after the final decree and after the status of the parties had been thereby fixed that the alleged breach of trust occurred. It is not a case where an attempt after decree is being made to enforce the decree, but as before seen, it is an attempt to impeach the decree by showing that the finding that Garrels was the holder of the bonds was, to a certain extent at least, untrue, in that, as a matter of fact, he held them as trustee. This cannot be done.

It follows that the action of the court in denying the intervention was correct.

Appellants put forward the further proposition that the court erred in refusing to take an account of the rents and profits of the property covering the period between the first and second sale, between which times, Cunningham was in possession and operating the same. The proposition is based upon the principle that the object of foreclosure pro- ceedings being to reduce the estate to money so as to be in condition for distribution to bond holders, it would be an absurd and useless thing to sell at the foreclosure sale, money already on hand, and that a decree, in the absence of express provisions to that affect, will not be construed as authorizing the passing of title to such money at fore- closure sale. The position is supported by authority.

Washington Irr. Co. v. Calif., etc., Trust Co., 115 Fed. 20, 25. Counsel for appellees cite in support of the action of the court below, Funk v. Mercantile Trust Co., 89 Iowa 264. An examination of that case discloses, however, that it was held merely that it was competent for a mortgage to cover and a foreclosure decree and sale to pass all of the property therein described, among which in that case were "income and royalties, rents issues and profits." The court held that debts due the mortgagor for coal which it was mining and marketing, passed under the terms of the mortgage, decree and sale. The terms of the decree in this case, following the terms of the mortgage, are:

"Also all the things in action, contracts, claims and de- mands of said Las Vegas Railway & Power Co., together with all the rents, issues, profits, income, privileges, im- munities and franchises of said Las Vegas Railway & Power Co., and also all the estate, right, title, interest, claim and demand whatsoever, as well in law as in equity, of said company, intending to include and cover herein and hereby, all such property rights, franchises and privileges set out and described in the said deed of trust, etc."

There is nothing in this language which can be con- strued as intending to pass title to money thereafter to come into the treasury from the profits of the property. The profits concerning which an account was sought by

In re James Englehart, 17 N. M. 299.

the appellants, did not then exist, and cannot be held to have been contemplated by the decree.

It follows therefore that the court below erred in refusing to take an account of these rents and profits, covering the period of time between the first and second sale, when the property was in the hands of Cunningham.

For the reasons stated, the judgment of the court below is reversed and the cause is remanded to the district court below of San Miguel County with instructions to take an account of the rents and profits of the property involved covering the period between the first and second sale, and to distribute the same to the respective parties as their interests appear, and it is so ordered.

SYLLABUS (BY THE COURT).

