[Civ. No. 49702. Second Dist., Div. Four. Dec. 29, 1977.]

In re the Marriage of LUCRETIA C. and CARL S. CLEVELAND, SR.
LUCRETIA C. CLEVELAND, Appellant, v.
CARL S. CLEVELAND, SR., Respondent.

**COUNSEL**

Wallace. C. Frank for Appellant.

Pachter, Gold, Schaffer & Kotler, Arnold H. Gold and Robert A. Zeavin as Amici Curiae on behalf of Appellant.

Richards, Watson, Dreyfuss & Gershon, Richard Richards and Arnold Simon for Respondent.

**OPINION**

**KINGSLEY, J.**—The wife appeals from the portions of an interlocutory decree of dissolution that held valid an antenuptial agreement between the parties and distributed property in accordance with that agreement. We affirm.

About 15 minutes prior to their marriage, the parties executed an antenuptial agreement, drawn by an attorney for the husband. Although signed by both parties, the agreement was never acknowledged. The effect of the agreement was to make all property then owned by either party, and all property thereafter acquired, the separate property of the party then owning or thereafter acquiring that property.

The trial was bifurcated, Judge Markey holding that the agreement was valid as against both contentions. Thereafter, the issue of support was heard and decided by Judge Alexander, who entered the ultimate interlocutory decree which incorporated Judge Markey's ruling as to validity. The support provisions are not here attacked.

On this appeal, the wife, and amicus curiae, contend that the agreement was void because not acknowledged. In addition, the wife claims that the agreement was void because obtained by fraud and undue influence.

I

The evidence as to the issue of fraud and undue influence was conflicting; we cannot say that Judge Markey erred in concluding that the agreement was entered into freely and voluntarily.

II

■ The principal issue before us on this appeal is a matter of law: Was the agreement, although otherwise valid, void because not acknowledged? We conclude that it was not void for that reason.

Section 5134 of the Civil Code provides as follows: "All contracts for marriage settlements must be in writing, and executed and acknowledged or proved in like manner as a grant of land is required to be executed and acknowledged or proved."

The parties have discussed the effect on this case of the decision in *Estate of Cutting* (1916) 174 Cal. 104 [161 P. 1137]. However, although the opinion in that case refers, among other sections, to the predecessor section of section 5134, it nowhere appears from the opinion that the instrument therein involved was not acknowledged.[1] The sole issue

---

[1]At oral argument we were asked to secure and examine the appellate file in the *Cutting* case. We have not done so. A judicial opinion is precedent for what it discusses

discussed was whether the requirement of then section 179 of the Civil Code (now § 5135) that the instrument be recorded prevented an unrecorded instrument from being effective between the parties. The holding was that it did not. That case, therefore, is not helpful in deciding the case at bench.

We conclude that the answer to the contention made in this case lies in the fact that section 5134 does not make "acknowledgement" the sole formal requirement. The statute requires only that the instrument be "acknowledged *or proved* in like manner as a grant of land is required to be executed and acknowledged or proved." But proof of an instrument may be made before (inter alia) a notary public or a judge of a superior court. (Civ. Code, §§ 1180, 1181.) There is no requirement that the proof or acknowledgement be at any particular time after execution. In the present case, both parties swore (the husband before a notary in his deposition and the wife in oral testimony) that the agreement had been executed by them. Those oaths constituted the "acknowledgement or proof" that the statute requires.[2]

The judgment is affirmed.

Files, P. J., concurred.

**JEFFERSON (Bernard), J.**—I dissent.

I disagree with the majority in its interpretation of section 5134 of the Civil Code. The majority holds that the antenuptial agreement signed by the marital partners 15 minutes prior to their marriage and not acknowledged prior to their marriage was valid and not in violation of Civil Code section 5134. The majority concludes that the antenuptial

---

and decides, not for matters neither discussed nor decided. Thus an examination of the Supreme Court's file would add nothing to what we can glean from the text of the opinion. (*General Motors Accept. Corp.* v. *Kyle* (1960) 54 Cal.2d 101, 114 [4 Cal.Rptr. 496, 351 P.2d 768]; 6 Witkin, Cal. Procedure (2d ed. 1971), Appeal, § 698, p. 4615.)

[2] It is to be noted that the conduct of the parties, during 14 years of marriage, was in accord with the terms of the agreement. It has been held that even an oral prenuptial agreement is enforceable between the parties where it has been carried out and acted upon by them. (See Aguilar & Aguilar, *Property Agreements Between Spouses in California* (1962) 2 Santa Clara Law. 53, 54; *Woods* v. *Security-First Nat. Bank* (1956) 46 Cal.2d 697, 701 [299 P.2d 657]; *Estate of Piatt* (1947) 81 Cal.App.2d 348 [183 P.2d 919].)

agreement did not violate section 5134 because, during dissolution proceedings years after the marriage, the agreement was acknowledged by the husband before a notary at the taking of his deposition and by the wife before the judge of the superior court at the trial, in accordance with the method-of-acknowledgment provisions found in Civil Code sections 1180 and 1181.

The majority interprets Civil Code section 5134 as permitting an acknowledgment of an antenuptial agreement to be made at *any* time *after* the marriage of the parties to the agreement. In the case at bench, the parties married in 1960 and separated in 1972. The acknowledgments of the antenuptial agreement which was signed by the parties on August 12, 1960, took place more than 12 years following the marriage of the parties.

It is my view that the correct interpretation of Civil Code section 5134 requires that, for a prenuptial agreement *to be valid and enforceable,* the acknowledgment or proof of the written agreement must take place *prior* to the date of the marriage. The parties certainly intend for a prenuptial agreement to become effective upon the marriage of the parties. The only way for this intent to be carried out is for the instrument to meet the requirements of section 5134 of the Civil Code prior to the marriage.

In the case at bench, the majority opinion stresses the fact that section 5134 of the Civil Code provides an alternative to "acknowledgment" as a means of proving execution. The majority points out that the section requires that the writing be acknowledged "or proved" in like manner as a grant of land. But I fail to see how the use of the additional language "or proved" means that the acknowledgment *or proof* of execution may take place years after the marriage instead of before the marriage. Either the prenuptial agreement is acknowledged or proved prior to the marriage so as to become effective upon the marriage, or else it is invalid thereafter.

A consideration of other pertinent sections of the Civil Code demonstrates that the Legislature did not intend the phrase "or proved," used in section 5134, to have any bearing on the time the instrument would become effective. Thus, Civil Code section 1181 provides, in relevant part, that "[t]he *proof* or *acknowledgment* of an instrument may be made before a notary public at any place within this state, or within the county or city and county in this state in which the officer specified below was elected, or appointed, before either: [¶] 1. A clerk of a municipal or

justice court; [¶] 2. A county recorder; [¶] 3. A county clerk; [¶] 4. A court commissioner; [¶] 5. A judge of a municipal or justice court; [¶] 6. A district attorney; [¶] 7. A clerk of a board of supervisors; [¶] 8. A city clerk; [¶] 9. A county counsel; [¶] 10. A city attorney." (Italics added.) Civil Code section 1182 provides that "[t]he *proof* or *acknowledgment* of an instrument may be made without this state, but within the United States, and within the jurisdiction of the officer, . . ." (italics added), and lists five officials before whom such proof or acknowledgment may be made. Similarly, Civil Code section 1183 sets forth a list of officials before whom "[t]he proof or acknowledgment of an instrument may be made without the United States."

Civil Code sections 1181, 1182 and 1183 make clear, therefore, that the "or proved" alternative to the "acknowledged" method of establishing due execution of a premarital written agreement, required by Civil Code section 5134, means only that the "proof" method must be accomplished by the parties appearing before one official of the same category of officials as is provided for the "acknowledgment" method. There is no alternative method provided by Civil Code section 5134 of proving due execution of the written prenuptial agreement than by the parties appearing before one of the officials listed in Civil Code sections 1181, 1182, or 1183.

I cannot agree that Civil Code section 5134 should be interpreted so that a written premarital agreement—by not complying with section 5134—is considered invalid at the beginning of the marriage, but then, through acts of the parties years later, becomes valid retroactively to the beginning of the marriage.

The correct interpretation of Civil Code section 5134 was made in 1878 in the case of *Estate of Charles Patton* (1878) Myrick's Prob. Rep. 241. The court said in the *Estate of Charles Patton* case, that "[a]s the alleged contract was not acknowledged, or proved, *before* the marriage, it is *not* a marriage contract, and has no validity as such." (*Estate of Charles Patton, supra,* Myrick's Prob. Rep. 241, 242.) (Italics added.) In addition, the court stated: "The contract must be complete in all its parts *before* the marriage." (*Id.* at p. 242.) (Italics added.)

In the *Estate of Charles Patton* case, the premarital agreement which was declared to be invalid had been signed before marriage but, as in the case at bench, had not been acknowledged until eight years later. The statute involved in the *Estate of Charles Patton* case was the forerunner

of Civil Code section 5134, and was substantially the same as that set forth in section 5134. The statute involved in the *Estate of Charles Patton* case required that "all marriage contracts shall be in writing, and executed and acknowledged, or proved, in like manner as a conveyance of land is required to be executed and acknowledged or proved." (1 Hittell 3576, 3578.)

It is true that the *Estate of Charles Patton* case was a decision by a probate trial court, so that it is not a binding precedent upon this court. "But such decisions are by no means ignored; when collected and readily available for study they may be cited for their persuasive value, and are occasionally followed in the absence of controlling higher authority. Examples are: [¶] (1) Coffey's Probate Decisions (superior court decisions written many years ago by a probate judge). [Citations.]" (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 659, pp. 4574-4575.) Myrick's Probate Reports are in the same category as Coffey's Probate Decisions.

In a footnote, the majority opinion refers to the fact that the conduct of the parties during 14 years of marriage was in accord with the terms of the agreement. I fail to see how evidence of conduct has any relevancy to the issue of the proper interpretation of Civil Code section 5134. The prenuptial agreement in the case at bench covers matters which are not subject to any conduct of the parties designed to carry out the agreement. Thus, the agreement provided that the parties were waiving their rights such as to be administrator of the other's estate, the right to claim a family allowance or a probate homestead, and the right to contest any will of the other. No conduct of the parties after marriage should be held to validate an antenuptial agreement which is invalid at the beginning of the marriage because it fails to comply with the provisions of Civil Code section 5134.

I would therefore reverse the judgment from which the appeal has been taken.