1999-NMCA-034
974 P.2d 675
**Bertha HERRERA, Petitioner–Appellee/Cross–Appellant,**

v.

**John Paul HERRERA, Respondent–Appellant/Cross–Appellee.**

**No. 19,128.**

Court of Appeals of New Mexico.

Jan. 4, 1999.

Michael Golden, Moore & Golden, P.A., Santa Fe, for Appellee.

Nancy Ann Richards, Las Vegas, for Appellant.

## OPINION

ALARID, Judge.

{1} John Paul Herrera (Husband) appeals from the trial court's enforcement of a Marital Settlement Agreement (MSA) entered into by Husband and Bertha Herrera (Wife). Husband asserts that the MSA is not an enforceable contract and that the division of community property was unfair as to him. Wife cross-appeals. In her cross-appeal she asserts that the trial court abused its discretion in failing to award her attorneys' fees. We affirm Husband's appeal and reverse Wife's cross-appeal.

## FACTS

{2} On April 20, 1993, Wife filed a petition for dissolution of marriage. On June 7, 1994, Husband and Wife went to a private mediator, Mr. Mark Shaw, and participated in a settlement conference in order to agree upon a MSA. The settlement conference resulted in Husband and Wife reaching an agreement for the disposition of their property. After the conference, Wife was to reduce the agreement to writing and send it to Husband for signature. In reliance upon the agreement between the parties, Wife vacated their upcoming divorce hearing and then sent the written MSA to Husband for signature. Husband refused and still refuses to sign the MSA. Subsequently, Wife filed a motion for enforcement of settlement agreement and for entry of final decree of divorce which included a request for attorneys' fees.

{3} At the hearing on the motion, held on August 31, 1994, the trial court heard the testimony of several individuals. The testimony that is particularly pertinent is that of Mr. Shaw, Ms. Anna Aragon, Husband's attorney at the time of the settlement conference, and Husband himself. At the hearing, Mr. Shaw testified that Husband understood the terms of the MSA and that Husband made no objection to, and agreed to, the terms of the MSA. He also stated that the MSA as written reflects the terms that the parties agreed upon at the settlement conference.

{4} Ms. Aragon testified that at the beginning of the conference, both parties were asked if they understood the purpose of the mediation and that both said they understood. She stated that both parties understood and agreed to the terms to be included in the MSA, and that the MSA as written reflects the agreement of the parties.

{5} Husband testified that he understood the terms of the arrangement. He stated that his attorney was present throughout the conference, that he was allowed to speak and participate in the conference, and that he could ask questions and confer with his attorney privately. He testified that at the end of the conference, Mr. Shaw summarized the

proceedings and asked the parties if they understood the terms. Husband said he understood, agreed to the terms of the agreement and thought they were fair enough. Husband stated that at the time of the conference, he thought the agreement was for the best.

{6} On October 17, 1994, the trial court entered an order enforcing settlement agreement and entering decree of divorce. On November 28, 1994, the trial court entered an amended order enforcing settlement agreement and entering decree of divorce and entered the final divorce decree. Wife then filed a verified application for award of attorneys' fees and costs. The trial court held a hearing on Wife's motion on December 15, 1994. At the conclusion of the hearing, the trial court verbally denied Wife's application. Husband and Wife appeal.

## DISCUSSION

### I. Enforcement of the MSA

{7} The statute governing contracts or settlements terminating marriage require that the settlement be in writing, executed, and acknowledged. *See* NMSA 1978, § 40-2-4 (1907). Wife argues that when Husband testified in court that he believed the agreement reached at the settlement conference was fair and the writing accurately set forth the terms he agreed to, Husband "proved" the existence of the contract. Wife relies upon *In re Marriage of Cleveland*, 76 Cal. App.3d 357, 142 Cal.Rptr. 783 (1977) and *Christiansen v. Christiansen*, 100 N.M. 102, 666 P.2d 781 (1983). In *Cleveland*, the California Court of Appeal upheld a marital agreement which was not acknowledged at the time of its execution. The court held that husband's and wife's testimony under oath at trial as to the validity of the agreement was sufficient proof of a binding agreement between the parties. *See Cleveland*, 142 Cal.Rptr. at 784–85. Likewise in *Christiansen*, the issue was also whether an unacknowledged marital agreement was binding. 100 N.M. at 103, 666 P.2d at 782. The wife sought to invalidate a marital agreement on grounds of improper acknowledgment. The wife, however, had testified at trial that she had executed the agreement and that her signature was valid. *See id.* Relying on

*Cleveland*, the New Mexico Supreme Court held that by testifying under oath at trial as to the validity of the signature the wife "proved" the marital agreement. *See id.* at 104, 666 P.2d at 783. Wife also relies on cases where the MSA was enforced after the terms of the MSA were read into the record in court and acknowledged by both parties. *See Thomas v. Thomas*, 5 Ohio App.3d 94, 449 N.E.2d 478, 483 (1982); *Gangopadhyay v. Gangopadhyay*, 184 W.Va. 695, 403 S.E.2d 712, 715–16 (1991).

{8} These cases are distinguishable from the present case. First, proving the existence of a contract that is missing the acknowledgment requirement only demands that the individuals that signed the agreement testify that it is their signature and that they intended to sign the agreement. Proving the existence of a contract by having the individuals testify about their signature is not the same as this case. Either the individuals signed the contract or they did not. Testifying that one did not sign the alleged contract does not prove the existence of a contract. Second, reading the terms of the MSA into the record does not make the MSA enforceable because this does not prove that Husband consented to the terms of the MSA.

{9} Husband contends that the statute of frauds applies to the MSA. We agree. All settlement agreements are contracts and therefore are subject to contract law, including the statute of frauds. *See Nicholson v. Barab*, 233 Cal.App.3d 1671, 285 Cal.Rptr. 441, 447 (1991); *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799–800 (9th Cir. 1991); *cf. Tellez v. Tellez*, 51 N.M. 416, 419, 186 P.2d 390, 392 (1947) (holding that marriage settlement agreements fall within statues of frauds). That being so, this MSA was required to be in writing and signed by the party to be charged, Husband. *See Nicholson*, 285 Cal.Rptr. at 447.

{10} Wife contends that if the statute of frauds applies to settlement agreements, then her part performance of the agreement satisfies the writing requirement. Wife contends that in reliance on and in compliance with the oral MSA, she vacated the divorce hearing, prepared all of the documents nec-

essary to carry out the terms of the agreement and incurred costs and paid fees. These actions, she contends, constitute part performance of the MSA. We are not persuaded.

{11} Part performance requires that the "acts which are relied upon [are] unequivocally referable to the contract. Acts which, although done in performance of the contract, admit to an explanation other than the contract ... are not generally acts of partial performance which will take the agreement out of the statute of frauds." *Hall v. Hall*, 222 Cal.App.3d 578, 271 Cal. Rptr. 773, 778 (1990). Additionally, the existence of the contract must be proved by "'clear, cogent and convincing' evidence." *Alvarez v. Alvarez*, 72 N.M. 336, 341, 383 P.2d 581, 584 (1963) (quoting *Paulos v. Janetakos*, 41 N.M. 534, 539, 72 P.2d 1, 3 (1937)); *Nashan v. Nashan*, 119 N.M. 625, 629, 894 P.2d 402, 406 (Ct.App.1995).

{12} Wife's actions are not those which would unequivocally prove the existence of a contract. Hearings are vacated on a regular basis, not just for contractual reasons. Had Wife presented evidence that she paid Husband for their home, paid the taxes, made improvements, etc., she may have had a part performance defense to the statute of frauds; but she did not.

{13} What does prove the existence and therefore enforceability of the MSA is the testimony given to the trial court. The purpose of the statute of frauds is to prevent fraud and perjury. *See Bentley v. Potter*, 694 P.2d 617, 621 (Utah 1984); *see also Zlotziver v. Zlotziver*, 355 Pa. 299, 49 A.2d 779, 781 (1946). "It is not to prevent the performance or the enforcement of oral contracts that have in fact been made [or] to create a loophole of escape" for one who seeks to repudiate an agreement that he admits was made. 4 Caroline N. Brown, *Corbin on Contracts* § 22.1, at 703–04 (Joseph M. Perillo ed., rev. ed.1997).

{14} NMSA 1978, § 55–2–201(3) (1961) provides:

A contract which does not satisfy the [writing] requirements of Subsection (1) but which is valid in other respects is enforceable:

....

(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made....

Although the Uniform Commercial Code applies to sales of goods and not marital settlement agreements, this statute codifies a general exception to the statute. This "sensible provision represents legislative recognition of a policy common" to the statute of frauds. Corbin, *supra*, § 14.2, at 175; *see also* Peter J. Shedd, *The Judicial Admissions Exception to the Statute of Frauds: An Update*, 12 Whittier L.Rev. 131 (1991).

{15} We think it is clear that a party may not plead the statute of frauds as a defense while at the same time admit in the pleadings or otherwise before the court the making of the contract as alleged by the plaintiff. *See English v. Standard Optical Co.*, 814 P.2d 613, 617 (Utah Ct.App.1991). To do so skews the purpose of the statute. In *Carney*, 68 N.M. at 72, 358 P.2d at 696, the Court held that where a party in its answer admits a contract but fails to claim the benefit of the statute of frauds, he is deemed to waive the protection of the statute. In such case his answer is a memorandum in writing and this satisfies the statute. *See id.* In the instant case, Husband admitted having agreed to the contract and now seeks to repudiate his prior agreement. We do not read the holding in *Carney* to permit an individual who concedes having entered into a settlement to put aside such agreement by utilizing the statute of frauds as a bar. *See Gonzales v. Atnip*, 102 N.M. 194, 195, 692 P.2d 1343, 1344 (Ct.App.1984) (agreements to settle are enforceable through judicial proceedings).

{16} In the present case, there was ample testimony that the terms of the MSA had been agreed to by both parties. Mr. Shaw testified that at the time of settlement, Husband stated that he understood and agreed to the terms of the MSA. He also testified that the written MSA reflected the terms that the parties had agreed upon. Ms. Aragon testified that both parties understood the

purpose of the settlement, both parties agreed to the terms of the settlement, and that the written MSA reflected the terms the parties had orally agreed upon. *See Navajo Tribe v. Hanosh Chevrolet–Buick, Inc.,* 106 N.M. 705, 707, 749 P.2d 90, 92 (1988) (holding appellant's attorney had apparent authority to settle case and enforcement of settlement agreement . was proper). Most important however, is the testimony of Husband. Husband testified that he understood the terms of the agreement, that he agreed to the oral terms of the agreement and that he thought the agreement was fair enough and for the best. *See* Richard W. Duesenberg, *The Statute of Frauds in its 300th year: The Challenge of Admissions in Court and Estoppel,* 33 Bus.Law. 1859, 1866 (1978) (discussing that an absolute admission that the party had entered into a contract is not required; rather "[a]s with any other testimony, the probative force of evidence given can and will be weighed by the trier of facts, and ... may be taken to amount to an admission"). This testimony was believed by the trial court and is clear and convincing evidence of the existence of the MSA.

{17} Further, "[t]he historical and current public policy of this state is to favor the settlement of disputed claims." *Gonzales v. Atnip,* 102 N.M. at 195, 692 P.2d at 1344. The MSA "constituted a contract of settlement which is enforceable through judicial proceedings, and the repudiation by appellant does not release [him] from its enforcement under the facts in this case." *Jones v. United Minerals Corp.,* 93 N.M. 706, 707, 604 P.2d 1240, 1241 (1979). Based on the oral testimony and the trial court's findings, strict compliance with the requirement of acknowledgment before a notary public is not required to enforce the MSA. *Cf. Gonzales,* 102 N.M. at 196, 692 P.2d at 1345 (holding compliance with Release Act which provides that settlement agreement for personal injury lawsuit " 'shall be void unless it is acknowledged before a notary public' " not required for settlement of such claim) (quoting NMSA 1978, § 41–1–1(C) (1971)); *see also Richardson v. Richardson,* 180 Cal.App.3d 91, 225 Cal.Rptr. 370, 374 (1986) (holding oral agreement to settle martial settlement agreement reached at judicially supervised settlement conference enforceable absent written acknowledgment). We therefore affirm the trial court's holding that the MSA is enforceable.

## II.  Fairness

{18} Husband asserts that the property division and MSA was not fair. He contends that there should be an equal division of the community property. Spouses, however, may enter into voluntary settlement agreements. A voluntary marital settlement agreement entered into by both spouses is sacrosanct and will not be upset by the court "absent fraud, duress, mistake, breach of fiduciary duty, or other similar equitable grounds for invalidating an agreement." *Ruggles v. Ruggles,* 116 N.M. 52, 70, 860 P.2d 182, 200 (1993). Husband has made no showing of fraud, duress, mistake or any other like circumstance in this case. We hold that the property division as agreed upon by both parties was fair.

## III.  Cross–Appeal/Attorneys' Fees

{19} Wife asserts that the trial court abused its discretion when it refused to award her attorneys' fees. *See Monsanto v. Monsanto,* 119 N.M. 678, 681, 894 P.2d 1034, 1037 (Ct.App.1995). Ordinarily a party may not recover attorneys' fees absent authorization by statute, court rule, or an agreement providing for such recovery. *See id.* Authority to award attorneys' fees in domestic relations cases is provided by New Mexico statutory law. *See* NMSA 1978, § 40–4–7(A) (1997). Section 40–4–7(A) provides in part that: "The court may make an order, relative to the expenses of the proceeding, as will ensure either party an efficient preparation and presentation of his case."

{20} In addition, paragraph 8 of the MSA which we enforce in this case, provides for the award of attorneys' fees to a party whose actions require enforcement through litigation. Husband, by refusing to sign, required the instant action and caused wife to incur

attorney's fees which would not otherwise have been incurred. Wife is entitled to an award of attorneys' fees and the trial court shall so modify its order.

## CONCLUSION

{21} Based on the foregoing discussion, we affirm the trial court's enforcement of the MSA and reverse the trial court's decision denying Wife's claim for attorneys' fees and costs.

{22} **IT IS SO ORDERED.**

DONNELLY and ARMIJO, JJ., concur.