1999-NMSC-028

986 P.2d 450

NEW MEXICO RIGHT TO CHOOSE/ NARAL, Abortion and Reproductive Health Services, Planned Parenthood of the Rio Grande, Curtis Boyd, M.D., Lucia Cies, M.D., Bruce Ferguson, M.D., and Lewis Koplik, M.D., Plaintiffs–Appellees and Cross–Appellants,

v.

William JOHNSON, Secretary of the New Mexico Human Services Department, Defendant–Appellant and Cross–Appellee,

and

Eugene E. Klecan and Donald Schaurete, Defendants–in–Intervention and Appellants and Cross–Appellees.

No. 23239.

Supreme Court of New Mexico.

June 23, 1999.

Crider, Calvert & Bingham, P.C., Stevan Douglas Looney, Special Assistant Attorney General, Albuquerque, White, Koch, Kelly & McCarthy, P.A., M. Karen Kilgore, Santa Fe, Charles J. Milligan, General Counsel, New Mexico Human Services Department, Santa Fe, for Appellant and Cross–Appellee, William Johnson, Secretary of Human Services Department.

Eugene E. Klecan, Albuquerque, for Appellants and Cross–Appellees Eugene E. Klecan and Donald Schaurete.

Freedman, Boyd, Daniels, Peifer, Hollander, Guttmann & Goldberg, J. Michele Guttmann, Albuquerque, Louise Melling, Catherine Weiss, Reproductive Freedom Project, American Civil Liberties Union Foundation, New York, NY, Cynthia A. Fry, Albuquerque, Priscilla Smith, Catherine Albisa, Center for Reproductive Law & Policy, New York, NY, Ann Scales, Albuquerque, Maureen Sanders, Albuquerque, Philip B. Davis, ACLU of New Mexico, Albuquerque, Roger Evans, Legal Action for Reproductive Rights, Planned Parenthood Federation of America, New York, NY, Carpenter & Chavez, Ltd., David J. Stout, Albuquerque, for Appellees and Cross–Appellants.

Paul Benjamin Linton, Acting General Counsel, Americans United for Life, Chicago, IL, for Amici Curiae Senator Duncan Scott, Representative Frank Bird, and Other Members of the New Mexico Legislature.

Bopp, Coleson & Bostrom, James Bopp, Jr., John K. Abegg, Terre Haute, IN, for Amicus Curiae Right to Life Committee of New Mexico.

Hon. Tom Udall, Attorney General, Martha A. Daly, Elizabeth A. Glenn, Assistant Attorneys General, Santa Fe, for Amicus Curiae New Mexico Attorney General.

Michael B. Browde, Christian G. Fritz, Albuquerque, for Amici Curiae New Mexico Leagues of Women Voters and New Mexico Legislators.

Martha F. Davis, Deborah A. Ellis, Now Legal Defense and Education Fund, New York, NY, Rondolyn R. O'Brien, Albuquerque, for Amici Curiae New Mexico Women's Bar Association and New Mexico Public Health Association.

## OPINION

MINZNER, Chief Justice.

{1} In their cross-appeal from a district court decision denying them attorney fees, Plaintiffs New Mexico Right to Choose/NARAL and others (collectively "Plaintiffs") urge this Court to adopt an additional exception to our rule that litigants ordinarily are responsible for their own attorney fees. We decline to do so in this case. We therefore affirm the district court's decision. We award no costs on appeal.

## I.

{2} In the district court, Plaintiffs sought injunctive relief against the Secretary of the Human Services Department. Plaintiffs alleged that the Department had adopted new rules for its medical assistance program that violated their constitutional rights under Article II, Sections 4 and 18 of the New Mexico Constitution. The district court enjoined the Department from enforcing its new rules, and awarded Plaintiffs costs.

{3} The Department, joined by intervenors Klecan and Schaurete, appealed the ruling on Plaintiffs' state constitutional claims.

We affirmed that ruling in a prior opinion. *See New Mexico Right to Choose/NARAL v. Johnson,* 1999–NMSC–005, ¶ 61, 126 N.M. 788, 975 P.2d 841, *cert. denied sub nom. Klecan v. New Mexico Rights to Choose/NARAL,* —— U.S. ——, 119 S.Ct. 1256, 143 L.Ed.2d 352 (1999) [hereinafter *Johnson I* ]. Plaintiffs cross-appealed the district court's decision granting Klecan and Schaurete's motion to intervene and the court's decision denying them attorney fees, but Plaintiffs moved this Court prior to briefing to stay the portion of their cross-appeal that concerned attorney fees. *Id.* In our prior opinion, we reversed the district court's ruling allowing Klecan and Schaurete to intervene. *Id.* After we filed *Johnson I,* Plaintiffs moved for an award of costs on appeal. We then set a briefing schedule on the attorney fees issue.

{4} Plaintiffs had argued at trial that they were entitled to fees under the "private attorney general doctrine." *See, e.g., Arnold v. Arizona Dep't of Health Servs.,* 160 Ariz. 593, 775 P.2d 521, 536–37 (1989) (en banc). Plaintiffs also maintained that they were entitled to the fees under the "bad-faith exception." *See State ex rel. N.M. State Highway & Transp. Dep't v. Baca,* 120 N.M. 1, 6, 896 P.2d 1148, 1153 (1995). The district court declined to award attorney fees on either ground. On appeal, Plaintiffs now argue only that this Court should adopt the "private attorney general doctrine." For the following reasons, we decline to adopt this doctrine. We conclude that Plaintiffs are not entitled to an award of attorney fees or costs on appeal. We first address the attorney fees issue.

## II.

{5} Plaintiffs and the Department disagree about the appropriate standard of review on this cross-appeal. The Department asserts that we review the trial court's decision to deny attorney fees for an abuse of discretion. Plaintiffs ask, however, that we review de novo "the threshold question of whether the private attorney general doctrine should be adopted." We agree with both positions, which we reconcile as follows.

{6} "This court reviews the award of attorney fees for an abuse of discretion." *Gardner v. Gholson (In re Estate of Gardner),* 114 N.M. 793, 804, 845 P.2d 1247, 1258 (Ct.App.1993). This appears to be the traditional statement of the standard of review on appeal. *See, e.g., id.; Baca,* 120 N.M. at 8–9, 896 P.2d at 1155–56; *Lenz v. Chalamidas,* 113 N.M. 17, 18, 821 P.2d 355, 356 (1991); *Montoya v. Villa Linda Mall, Ltd.,* 110 N.M. 128, 130–31, 793 P.2d 258, 260–61 (1990). We have previously explained that "[a] trial court abuses its discretion when its decision is contrary to logic and reason." *Roselli v. Rio Communities Serv. Station, Inc.,* 109 N.M. 509, 512, 787 P.2d 428, 431 (1990); *accord Jaramillo v. Fisher Controls Co.,* 102 N.M. 614, 622–23, 698 P.2d 887, 895–96 (Ct.App. 1985).

{7} Nevertheless, even when we review for an abuse of discretion, "our review of the application of the law to the facts is conducted de novo." *State v. Elinski,* 1997–NMCA–117, ¶ 8, 124 N.M. 261, 948 P.2d 1209. Accordingly, we may characterize as an abuse of discretion a discretionary decision that "[is] premised on a misapprehension of the law." *Id.; accord State v. Barnett,* 1998–NMCA–105, ¶ 13, 125 N.M. 739, 965 P.2d 323; *cf. State v. Torres,* 1999–NMSC–010, ¶¶ 27–28, 127 N.M. 20, 976 P.2d 20 (explaining that although the admission of expert testimony is reviewed for an abuse of discretion, "the initial determination of whether to apply the [evidentiary] standard [for the admissibility of scientific evidence] entails a conclusion of law that is subject to de novo review").

{8} In this case, the district court rejected the private attorney general doctrine as a matter of law. Thus, the dispositive issue on appeal is a legal question, and we review the district court's answer to this question de novo. Because we conclude that the district court did not misapprehend the law in declining to adopt the private attorney general doctrine advocated by Plaintiffs, we would reverse the district court's decision only if it were "contrary to logic and reason." *Roselli,* 109 N.M. at 512, 787 P.2d at 431. Because we do not adopt the private attorney general doctrine advocated by Plaintiffs, and

because Plaintiffs have waived their claim to an award of attorney fees on any other grounds, we cannot say that the district court's exercise of its discretion in declining to award attorney fees in this matter was illogical or unreasonable. As a matter of course, then, we conclude that the district court did not abuse its discretion in denying Plaintiffs' motion for an award of attorney fees.

### III.

■ {9} "New Mexico adheres to the so-called American rule that, absent statutory or other authority, litigants are responsible for their own attorney's fees." *Montoya,* 110 N.M. at 129, 793 P.2d at 259. The American rule recognizes the authority of statute, court rule, or contractual agreement. *See* 1 Robert L. Rossi, *Attorneys' Fees* § 7:1, at 336 (2d ed.1995). We have strictly adhered to this rule since our territorial days. *See, e.g., City of Farmington v. L.R. Foy Constr. Co.,* 112 N.M. 404, 407, 816 P.2d 473, 476 (1991); *Central Adjustment Bureau, Inc. v. Thevenet,* 101 N.M. 612, 614, 686 P.2d 954, 956 (1984); *Aboud v. Adams,* 84 N.M. 683, 691–92, 507 P.2d 430, 438–39 (1973); *Riggs v. Gardikas,* 78 N.M. 5, 8, 427 P.2d 890, 893 (1967); *Barnes Agency v. Chino,* 60 N.M. 297, 302, 291 P.2d 328, 331 (1955); *State ex rel. Stanley v. Lujan,* 43 N.M. 348, 349, 93 P.2d 1002, 1003 (1939); *Goode v. Colorado Inv. Loan Co.,* 16 N.M. 461, 466, 117 P. 856, 857 (1911); *Atchison, Topeka & Santa Fe Ry. Co. v. Citizens Traction & Power Co.,* 16 N.M. 163, 169–71, 113 P. 813, 814–815 (1911); *cf. Dame v. Cochiti Reduction & Improvement Co.,* 13 N.M. 10, 15, 79 P. 296, 298 (1905) ("There is no allegation that the defendant undertook to pay attorney's fees in case of suit, and the bond attached to the complaint contains no such stipulation. In the absence of such an agreement, counsel fees cannot be awarded either as costs or otherwise.").

{10} Plaintiffs do not dispute our historical adherence to the American rule. Rather, they argue that "[t]his Court has previously articulated ... exceptions to the American Rule based on the Court's inherent, equitable powers" and that "[t]his Court has the inher-

ent power to recognize an additional exception to the American Rule and should do so in this case." They assert that "[t]his case presents the Court with the opportunity to recognize another exception to the American Rule"—to wit, "[t]he private attorney general doctrine [which establishes] that private plaintiff's attorneys are entitled to fees in cases where, as a result of their efforts, rights of societal importance are protected to the benefit of a large number of people." *See, e.g., Arnold,* 775 P.2d at 536–37; *Serrano v. Priest,* 20 Cal.3d 25, 141 Cal.Rptr. 315, 569 P.2d 1303, 1313–15 (1977) (in bank); *Miller v. EchoHawk,* 126 Idaho 47, 878 P.2d 746, 748 (1994); *Department of Fish, Wildlife, & Parks v. Montana Stockgrowers Ass'n (In re Dearborn Drainage Area),* 240 Mont.39, 782 P.2d 898, 900 (1989); *Stewart v. Utah Pub. Serv. Comm'n,* 885 P.2d 759, 783 (Utah 1994). We agree with Plaintiffs that the private attorney general doctrine would be an additional exception to the American rule. Thus, their argument requires a departure from established precedent. Plaintiffs have not justified such a departure.

### A.

■ {11} In *Trujillo v. City of Albuquerque,* 1998–NMSC–031, ¶ 33, 125 N.M. 721, 965 P.2d 305, we stated:

Stare decisis is the judicial obligation to follow precedent, and it lies at the very core of the judicial process of interpreting and announcing law. It promotes very important principles in the maintenance of a sound judicial system: 1) stability of the law, 2) fairness in assuring that like cases are treated similarly, and 3) judicial economy.

(Citations omitted). Thus, "'any departure from [precedent] ... demands special justification.'" *Id.* ¶ 34 (quoting *Arizona v. Rumsey,* 467 U.S. 203, 212, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984)). In evaluating "special justification," we consider the following factors:

1) whether the precedent is so unworkable as to be intolerable; 2) whether parties justifiably relied on the precedent so that reversing it would create an undue hardship; 3) whether the principles of law have

developed to such an extent as to leave the old rule "no more than a remnant of abandoned doctrine;" and 4) whether the facts have changed in the interval from the old rule to reconsideration so as to have "robbed the old rule" of justification. *Id.* ¶ 34 (quoting *Planned Parenthood v. Casey,* 505 U.S. 833, 855, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)). This need for special justification before we depart from precedent explains our "reluctan[ce] to extend awards of attorney's fees except in limited circumstances." *Turpin v. Smedinghoff,* 117 N.M. 598, 601, 874 P.2d 1262, 1265 (1994).

{12} Two important policies underlie the American rule. First and foremost, "the American rule promotes equal access to the courts for the resolution of *bona fide* disputes." *Sally–Mike Properties v. Yokum,* 179 W.Va. 48, 365 S.E.2d 246, 250 (1986). This justification for the rule has its roots in our Founders' "deliberate departure from the English practice [of awarding attorney fees], stemming initially from the colonies' distrust of lawyers and continued because of a belief that the English system favored the wealthy and unduly penalized the losing party." *Conte v. Flota Mercante del Estado,* 277 F.2d 664, 672 (2d Cir.1960) (citing Arthur L. Goodhart, *Costs,* 38 Yale L.J. 849, 872–77 (1929)). More recently, the United States Supreme Court observed:

> [I]t has been argued that since litigation is at best uncertain, one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel.

*Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967); *accord* 1 Rossi, *supra,* § 7.1, at 338. Under this rationale, we have declined to move " 'in the direction of some systems of jurisprudence that are willing, if not indeed anxious, to allow litigation costs so high as to discourage litigants from bringing [or defending] lawsuits, no matter how meritorious they might in good faith believe their claims to be.' " *Dunleavy v. Miller,* 116 N.M. 353, 363, 862 P.2d 1212,

1222 (1993) (quoting *Farmer v. Arabian Am. Oil Co.,* 379 U.S. 227, 235, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964)); *see also Fleischmann Distilling Corp.,* 386 U.S. at 717, 87 S.Ct. 1404 (noting that American "courts have generally resisted any movement in [the] direction" of the English system).

{13} In addition, the American rule "tends to preserve judicial resources." *Superintendent of Ins. v. Mountain States Mut. Cas. Co.,* 104 N.M. 605, 606, 725 P.2d 581, 582 (Ct.App.1986); *accord Fleischmann Distilling Corp.,* 386 U.S. at 718, 87 S.Ct. 1404; 1 Rossi, *supra,* § 7.1, at 339. As the Court of Appeals has noted, "where recovery is authorized, the courts often must resolve the question of what is a reasonable attorneys' fee." *Mountain States Mut. Cas. Co.,* 104 N.M. at 606, 725 P.2d at 582. Thus, a rule that expands judicial authority to award attorney fees may "substantially burden judicial administration." 1 Rossi, *supra,* § 7.1, at 339. Proceedings regarding attorney fee awards may continue long after the underlying claim. *See Mountain States Mut. Cas. Co.,* 104 N.M. at 606, 725 P.2d at 582. For example, the Connecticut Superior Court struck down a regulation similar to the one at issue in *Johnson I. See Doe v. Maher,* 40 Conn.Supp. 394, 515 A.2d 134 (1986). Only the issue of attorney fees generated subsequent appeals in that case, and that issue was not resolved until more than four years later. *See Doe v. Heintz,* 204 Conn. 17, 526 A.2d 1318 (1987); *Doe v. Connecticut,* 216 Conn. 85, 579 A.2d 37 (1990).

{14} These policies underlying the American rule are still important today. Further, the development of state constitutional jurisprudence in New Mexico does not provide a basis for concluding that the American rule is "so unworkable as to be intolerable." *Trujillo,* 1998–NMSC–031, ¶ 34, 125 N.M. 721, 965 P.2d 305. Most of the recent cases in which this Court has independently interpreted the Bill of Rights in the New Mexico Constitution have been criminal matters involving the public defender or tort cases, in which attorney fees were not at issue. In civil rights cases, this Court has affirmed the award of reasonable attorney fees when authorized by statute, *see* NMSA 1978, § 28–1–13(D)

(1987), and there is no abuse of discretion, see *Lucero v. Aladdin Beauty Colleges, Inc.*, 117 N.M. 269, 271, 871 P.2d 365, 367 (1994); *Smith v. FDC Corp.*, 109 N.M. 514, 522, 787 P.2d 433, 441 (1990).

{15} In addition, our past rulings that allowed reasonable attorney fee awards in certain exceptional circumstances have not "'robbed the [American] rule' of justification" or rendered it "'no more than a remnant of abandoned doctrine.'" *Trujillo*, 1998–NMSC–031, ¶ 34, 125 N.M. 721, 965 P.2d 305 (quoting *Casey*, 505 U.S. at 855, 112 S.Ct. 2791). The exceptions we have recognized are limited in number and narrow in scope. In general, the exceptional circumstances that we have recognized fall into one of three categories: (1) exceptions arising from a court's inherent powers to sanction the bad faith conduct of litigants and attorneys, (2) exceptions arising from certain exercises of a court's equitable powers, and (3) exceptions arising simultaneously from judicial and legislative powers. These limited, narrow exceptions appear to be consistent with the policies underlying the American rule. We conclude that any new exception ought to be similarly consistent with those policies. We also conclude that Plaintiffs have argued for an exception that is overly broad and not consistent with those policies.

**B.**

{16} Most recently, this Court and the Court of Appeals have recognized that an award of attorney fees without a basis in a statute, contractual provision, or court rule may be justified as an exercise of a court's inherent powers when litigants, their attorneys, or both have engaged in bad faith conduct "before the court or in direct defiance of the court's authority." *Baca*, 120 N.M. at 6, 896 P.2d at 1153; *accord Security Pac. Fin. Servs. v. Signfilled Corp.*, 1998–NMCA–046, ¶ 20, 125 N.M. 38, 956 P.2d 837; *Martinez v. Martinez*, 1997–NMCA–096, ¶ 23, 123 N.M. 816, 945 P.2d 1034; *Lopez v. American Airlines, Inc.*, 1996–NMCA–088, ¶ 11, 122 N.M. 302, 923 P.2d 1187. Some courts have characterized inherent powers as arising from a court's equitable powers. *See, e .g., Guardian Trust Co. v. Kansas City S.*

*Ry. Co.*, 28 F.2d 233, 241, 246 (8th Cir.1928), *rev'd on other grounds*, 281 U.S. 1, 50 S.Ct. 194, 74 L.Ed. 659 (1930). Other courts, however, have concluded that inherent powers differ from equitable powers in rationale and scope. *See, e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

{17} This Court has adopted the latter view. Specifically, we have followed the jurisdictions that have characterized inherent powers as powers arising from the necessity for both trial and appellate courts "to impose a variety of sanctions on both litigants and attorneys in order to regulate their docket, promote judicial efficiency, and deter frivolous filings." *Martinez v. IRS*, 744 F.2d 71, 73 (10th Cir.1984) (per curiam), *quoted with approval in Baca*, 120 N.M. at 4, 896 P.2d at 1151. We view the inherent powers underlying the bad faith exception as arising from the judiciary's power "to command the obedience of litigants and their attorneys." *Baca*, 120 N.M. at 4, 896 P.2d at 1151. "Such powers," we have explained, "inhere in judicial authority and exist independent of statute." *Id.* Such powers do not extend, however, beyond conduct "before the court or in direct defiance of the court's authority." *Id.* at 6, 896 P.2d at 1153.

{18} Allowing an award of reasonable attorney fees to sanction bad faith conduct pursuant to a court's inherent powers is consistent with the policies underlying the American rule. Those policies only require that "the losing litigant should not be discouraged from *fairly* prosecuting or defending a claim." *Yokum*, 365 S.E.2d at 250 (emphasis added); *accord Gerstle v. Gamble–Skogmo, Inc.*, 478 F.2d 1281, 1309 (2d Cir. 1973). They do not provide a shield to parties that *unfairly* prosecute or defend a claim by engaging in bad faith conduct. Further, the authority to award attorney fees in bad faith cases advances the policy of "preserv[ing] judicial resources." *Mountain States Mut. Cas. Co.*, 104 N.M. at 606, 725 P.2d at 582. A court may use such sanctions "to regulate [the court's] docket, promote judicial efficiency, and deter frivolous filings." *Martinez*, 744 F.2d at 73.

{19} We also have recognized certain exceptions to the American rule that might be characterized as arising from a court's equitable powers. One such exception allows an award of attorney fees when litigants have established their rights to a common fund. Early in our nation's history, the United States Supreme Court explained this exception in the context of an equitable suit involving a trust fund: "[W]here one of many parties having a common interest in a trust fund, at his [or her] own expense takes proper proceedings to save it from destruction and to restore it to the purposes of the trust, he [or she] is entitled to reimbursement ...." *Trustees v. Greenough*, 105 U.S. 527, 532–33, 26 L.Ed. 1157 (1881), *quoted with approval in Las Vegas Ry. & Power Co. v. Trust Co.*, 17 N.M. 286, 291, 126 P. 1009, 1010 (1912). New Mexico courts have recognized the common fund exception, either expressly or impliedly, in cases involving trusts, *see, e.g., Las Vegas Ry. & Power Co.*, 17 N.M. at 291–93, 126 P. at 1010, corporations, *see, e.g., Marron v. Wood*, 55 N.M. 367, 380, 233 P.2d 1051, 1060 (1951), quasi-public corporations, *see, e.g., Carabajal v. Candelaria*, 65 N.M. 159, 161, 333 P.2d 1058, 1060 (1958), and estates, *see, e.g., Gardner*, 114 N.M. at 804, 845 P.2d at 1258. In these cases, New Mexico courts exercised equitable powers. *See* 3 John Norton Pomeroy, *A Treatise on Equity Jurisprudence* §§ 979–980, at 894–96 (Spencer W. Symons ed., 5th ed.1941) (discussing trusts); 4 *id.* §§ 1088–1097, at 263–88 (discussing corporations); 4 *id.* § 1129, at 344–45 (discussing estates).

{20} The equitable exception recognized in the common fund cases is "consistent with the American Rule [because a] losing litigant does not pay attorney fees in addition to the amount of recovery. Rather, attorney fees are deducted from the recovery. Thus, a losing litigant is no better or worse off as a result of the [common fund] doctrine's application." *Wisconsin Retired Teachers Ass'n v. Employe Trust Funds Bd.*, 207 Wis.2d 1, 558 N.W.2d 83, 99 (1997); *see also* 1 Rossi, *supra*, § 7.5, at 346 n. 26 ("Even where the fees are to be paid from the nominal adversary in a common [fund] case, such as from the corporation in a shareholder derivative suit, the purpose is not to saddle a losing adversary with the costs of litigation but rather to impose the costs on the class that has benefited from the suit." (citing *Sarner v. Sarner*, 38 N.J. 463, 185 A.2d 851 (1962))).

{21} Another equitable exception permits New Mexico courts to award fees incurred in dissolving a wrongful injunction. Long ago, we established the precedent that "counsel fees paid for necessary services directed to procuring the dissolution of [an] injunction, when reasonable in amount, [are] ... recoverable as damages upon injunction bonds conditioned in the ordinary terms to pay such damages as the obligee may sustain by reason of the injunction, if the same be dissolved." *Webb v. Beal*, 20 N.M. 218, 222, 148 P. 487, 488 (1915); *accord Shultz v. Pascoe*, 94 N.M. 634, 635, 614 P.2d 1083, 1084 (1980); *Banes Agency*, 60 N.M. at 302, 291 P.2d at 331; *Tatavich v. Pettine*, 31 N.M. 479, 482, 247 P. 840, 841 (1926). We have incorporated this precedent into our rules of civil procedure. *See* Rule 1–066(C) NMRA 1999 (authorizing "such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained").

{22} In adopting this equitable exception, we explained that attorney fees are part of the damages sustained in bearing the imposition of a wrongful injunction:

> "It seems just and right that where a party asks the interposition of the power of the courts ... to deprive the defendant of some right or privilege claimed by him [or her], ... if on investigation it is found that the plaintiff had no just right either in the law or the facts to justify him [or her] in asking and obtaining from the court such a harsh and drastic exercise of its authority, that he [or she] should indemnify the defendant in the language of his [or her] bond for 'all damages he [or she] might sustain,' and that reasonable counsel fees necessary to the recovering of such injunction are properly part of his [or her] damage."

*Webb*, 20 N.M. at 223, 148 P. at 488 (quoting *Wittich v. O'Neal*, 22 Fla. 592, 599 (1886)). Central to this explanation is the fact that the authority to award attorney fees incurred

in dissolving a wrongful injunction only arises after judicial authority has been invoked to obtain the injunction. Thus, like the bad faith exception that we applied in *Baca*, 120 N.M. at 8, 896 P.2d at 1156, the wrongful injunction exception can arise only in the context of a litigant's conduct before a court and does not extend to prelitigation conduct by an administrative agency that is wrongful or even, as in this case, unconstitutional.

{23} Other exceptions arise simultaneously from the court's equitable powers as well as the Legislature's authority. The rationale for this general category has been explained as follows:

> [I]t seems correct to say that the power of the equity court to allow costs, though originating in statute, has become a common principle and incident of its judicial action, so that the mere establishment of a court of equity and the endowment of it with judicial authority necessarily imports a power in such court to adjudge costs.

*Stallo v. Wagner*, 245 F. 636, 638 (2d Cir. 1917) (internal quotation marks omitted). While this Court has implicitly adopted this rationale at times, the recognized exceptions that fall into this category are narrow in scope.

{24} One recognized exception that falls into this category is the exception for divorce and child custody proceedings. *See Oldham v. Oldham*, 28 N.M. 163, 164–65, 208 P. 886, 887 (1922) (noting that a marital dissolution statute "[was] not free from doubt," but construing it to be broad enough to allow the trial court to award attorney fees); *see also* NMSA 1978, § 40–4–7(A) (1997) ("The court may make an order, relative to the expenses of the [domestic relations] proceeding, as will ensure either party an efficient preparation or presentation of his [or her] case."); *Herrera v. Herrera*, 1999–NMCA–034, ¶ 19, 126 N.M. 705, 974 P.2d 675 ("Authority to award attorneys' fees in domestic relations cases is provided by New Mexico statutory law."). *But cf. Henderson v. Lekvold*, 99 N.M. 269, 271–72, 657 P.2d 125, 127–28 (1983) (allowing an award of attorney fees in a domestic relations case without an express citation to controlling statute). This category also includes an exception for breaches of fiduciary duties. *See Turpin*, 117 N.M. at 601, 874 P.2d at 1265 ("[T]he partnership statutes imply the basis for an award of attorney's fees only when there has been a breach of fiduciary duty as a result of constructive fraud that results in actual harm or when one partner sues in order to maintain the common fund."); *Bassett v. Bassett*, 110 N.M. 559, 564, 798 P.2d 160, 165 (1990) ("Where one partner [fraudulently] breaches the fiduciary duty owed another partner, on dissolution of the partnership and accounting of assets it is within the equitable jurisdiction of the court to consider an award of attorney fees to the aggrieved partner."); *Gardner*, 114 N.M. at 797, 803–04, 845 P.2d at 1251, 1257–58 (affirming the district court, which held that if the estate had inadequate resources to cover the attorney fees awarded, then the probate statutes, coupled with the personal representative's breaches of fiduciary duties, would justify the representative being held personally liable for the fees).

{25} We apply these exceptions in contexts traditionally viewed as equitable. *See* 4 Pomeroy, *supra*, §§ 1059–1097, at 157–288 (discussing fiduciary duties); 4 *id.* §§ 1098–1120, at 289–329 (discussing marital matters); 4 *id.* § 1303, at 869 (discussing persons and estates of infants). Because we can trace each of these exceptions to a statute or court rule, however, they are not contrary to the existing American rule, as routinely expressed, which only bars recovery of reasonable attorney fees "[i]n the *absence* of an authorizing statute or rule of court." *Thevenet*, 101 N.M. at 614, 686 P.2d at 956 (emphasis added). Further, these exceptions appear to promote equal access to the courts, either for plaintiffs whose claims arise from special relationships associated with a high degree of loyalty, trust, confidence, and dependence, or for defendants adversely affected by unique judicial action. Finally, none of these exceptions appears to have burdened judicial resources, perhaps because they are narrow in scope and perhaps also because courts can draw guidance from a number of cases that have analyzed and applied these exceptions over time.

**662**

## C.

{26} In contrast to the exceptions discussed above, we are unable to reconcile Plaintiffs' arguments in favor of a private attorney general doctrine with the American rule and its underlying policies. Plaintiffs have reasoned that we may recognize the private attorney general doctrine by enlarging our inherent powers and that we ought to do so. We disagree. Our cases on inherent powers do not justify the exception.

{27} Our past decisions have emphasized that we should invoke our inherent powers "sparingly and with circumspection." *Baca,* 120 N.M. at 8, 896 P.2d at 1155. Thus, while it remains within the province of the judiciary to define the contours of a court's inherent powers, *see Baca,* 120 N.M. at 7, 896 P.2d at 1154, we have been careful to limit our definition to those " 'powers which cannot be dispensed with in a court, because they are necessary to the exercise of all others,' " *id.* at 4, 896 P.2d at 1152 (quoting *United States v. Hudson,* 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812)). In particular, we have concluded that "a trial court's inherent powers do not extend to proceedings not occurring before that court or in defiance of that court's authority." *Id.* at 5, 896 P.2d at 1153. We reached this conclusion because conduct in proceedings before a court or in defiance of a court's authority directly impacts the court's ability to perform its essential judicial functions.

{28} Extending the Court's inherent powers to the task of creating and applying the private attorney general doctrine cannot be justified in the same manner. In the form advocated by Plaintiffs, application of the private attorney general doctrine would require the Court to look beyond the proceedings before it to determine which rights are of more societal importance than others, which classes of litigants have protected such rights, and which classes of people have benefitted from such protection. Plaintiffs have not shown that making such broad determinations would involve "powers which cannot be dispensed with in a court, because they are necessary to the exercise of all others."

{29} Absent such restraints, we are concerned that the use of the Court's inherent powers to create and apply a private attorney general doctrine is "without sufficient guidelines and too undefined." *Blue Sky Advocates v. State,* 107 Wash.2d 112, 727 P.2d 644, 649 (1986) (en banc). Such an unprincipled use of the doctrine would upset the careful "balancing of competing public policy concerns" that underlies the American rule and its recognized exceptions. *Baca,* 120 N.M. at 6, 896 P.2d at 1153. We note, for example, that the Legislature has already established public policy regarding attorney fee awards in certain civil rights cases. *See* § 28-1-13(D); *Lucero,* 117 N.M. at 271, 871 P.2d at 367. In addition, we must consider "the necessity to protect public revenues unless their diversion is specifically authorized by statute." *Torrance County Mental Health Program, Inc. v. New Mexico Health & Env't Dep't,* 113 N.M. 593, 600, 830 P.2d 145, 152 (1992); *see also Baca,* 120 N.M. at 7–8, 896 P.2d at 1154–55 (noting that this consideration "argue[s] against the assessment of attorney's fees against government litigants").

{30} The same concerns arise if we consider expanding our equitable powers. The private attorney general doctrine is not a traditionally recognized equitable exception. *See City of Seattle v. McCready,* 131 Wash.2d 266, 931 P.2d 156, 161 (1997) (en banc) (noting that a doctrine that awards attorney fees on the basis of " 'protection of constitutional principles' has never been articulated or applied as an independent equitable exception to the American rule in this ... jurisdiction."); *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 257–59, 265–66, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (rejecting the private attorney general doctrine on the grounds that the doctrine was irreconcilable with express provisions of the federal fee bill and that the doctrine did not accord with any of the traditional inherent and equitable exceptions that justify awards of attorney fees in spite of the fee bill); 1 Mary Francis Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees* ¶ 1.02[2][a][vii][B], at 1–33 n. 92 (1998) ("[I]t may well be that the [*Alyeska* ] Court adopted the reasoning of [*Guardian Trust Co.*], and held that the inherent power of

courts of equity to award counsel fees … applied only in the classes of cases in which English Courts of chancery made such equitable awards prior to 1789."). We need not limit our recognition of equitable precedents. We note only that our present case law on equitable exceptions provides no general principle from which we may derive an additional exception that would cover the facts of this case. Absent some constraint arising from equitable precedent, we are not satisfied that the use of our equitable powers to create and apply a private attorney general doctrine would be principled.

{31} Finally, we are concerned that the adoption of the private attorney general doctrine advocated by Plaintiffs would erode the policies underlying the American rule and move New Mexico courts in the direction of the English system of awarding attorney fees. We decline to adopt a new rule that moves New Mexico courts in this direction. *See Dunleavy,* 116 N.M. at 363, 862 P.2d at 1222. Unbridled judicial authority to "pick and choose" which plaintiffs and causes of action merit an award of attorney fees under the private attorney general doctrine would not promote equal access to the courts for the resolution of good faith disputes inasmuch as it lacks sufficient guidelines to prevent courts from treating similarly situated parties differently and could easily result in decisions that favor a particular class of private litigants while unduly discouraging the government from mounting a good faith defense. Such authority also would not promote the goal of conserving judicial resources inasmuch as it calls for the courts to engage in a fact-specific reexamination of the merits of a case to determine the significance and scope of the rights that have been protected. For these reasons, we conclude that a private attorney general doctrine resting solely on the Court's inherent or equitable powers does not warrant a place in New Mexico law at this time. *See Blue Sky Advocates,* 727 P.2d at 649; *City of Seattle,* 931 P.2d at 161.

## IV.

{32} The final issue we address is the question of costs on appeal. Although appellees who incur allowable costs on appeal may recover those costs if they are the prevailing parties, *see* Rule 12–403(A) NMRA 1999; *Atma v. Munoz,* 48 N.M. 114, 121, 146 P.2d 631, 635 (1944), it is generally the appellant who incurs allowable costs on appeal under the Rules of Appellate Procedure. *See* Rule 12–208(G) NMRA 1999 (requiring a docket fee to accompany the filing of a docketing statement in the Court of Appeals or a statement of the issues in the Supreme Court unless the docket fee had already been paid or free process had been granted on appeal); Rule 12–209(B) NMRA 1999 (requiring the appellant to pay for the record proper within ten days of the filing of the docketing statement); Rule 12–211(B)(2) NMRA 1999 (requiring the appellant to make satisfactory arrangements for payment of the cost of duplicating taped transcripts); Rule 12–211(C)(2) (requiring a party designating a portion of a stenographic transcript of proceedings to make satisfactory arrangements for payment of those portions of the transcript). The question of costs on appeal is more complicated in this case, however, because it involves both an appeal and a cross-appeal, and because the parties have not addressed this question in their briefs.

{33} In their Motion for Assessment of Costs on Appeal, Plaintiffs claim that they split the cost of preparing transcripts with the Department and consequently incurred costs of $507.80. They do not allege that they incurred costs for a separate transcript in their cross-appeal. In the absence of any valid argument to the contrary in Plaintiffs' motion or the parties' briefs, the Court exercises its discretion to apportion costs "in such manner as it may direct." Rule 12–403(A). In this case, we construe the parties' agreement to split costs to mean that the allowable costs incurred by the Department relate to its appeal on the merits, and the allowable costs incurred by Plaintiffs relate to their cross-appeal on the issues of intervention and attorney fees. Thus, we conclude that Plaintiffs did not incur allowable costs as an appellee in the Department's appeal. We also conclude that neither party is entitled to recover allowable costs relating to Plaintiffs' cross-appeal because the Court

ruled in favor of each party on one issue in that cross-appeal. Thus, there is no prevailing party entitled to an award of costs under Rule 12–403(A), and we decline to make such an award in either the Department's appeal or Plaintiffs' cross-appeal.

## V.

{34} For the foregoing reasons, we decline to adopt the private attorney general doctrine advocated by Plaintiffs in this case. We conclude that the district court did not err in declining to award attorney fees and we affirm the district court's decision. We also decline to award any costs on appeal. We therefore deny Plaintiffs' Motion to Assess Costs.

{35} **IT IS SO ORDERED.**

BACA, Justice, FRANCHINI, Justice and ARMIJO, Judge, New Mexico Court of Appeals (sitting by designation), concur.